# THE MARYLAND PAVEMENT COMPANY *vs.* J. BARRY MAHOOL, MAYOR, ET AL.

*Municipal Contracts—Lowest Bidder—Bid Not in Conformity With Reasonable Specifications May Be Disregarded—Discretion of Municipal Officials in Awarding Contracts—Mandamus.*

When the advertisement by municipal officers asking for bids for paving a street with belgian blocks provides that "each bidder must deposit with his proposal a sample granite block, stating at what quarry it was manufactured, and agree, if the contract is awarded to him, to use only blocks made at said quarry and equal to the sample," a bid unaccompanied by a sample block as specified may be disregarded in awarding the contract, since the requirement as to the sample block is reasonable.

While slight irregularities in a bid may be disregarded, yet an irregular bid may be rejected, and the Court will not interfere in such case in the absence of fraud or collusion.

When the lowest bid received is not in conformity with the specifications as advertised, the contract may be awarded to the next lowest bidder.

The provision in a municipal charter that contracts to do work of a certain character shall be awarded to the lowest responsible bidder is mandatory. But in determining who is the lowest responsible bidder the municipal officers have a wide discretion; they may consider the general qualifications of a bidder, and need not be guided solely by a consideration of his pecuniary responsibility.

When municipal officers are authorized to let contracts for works of public improvement to the lowest responsible bidder, their duties are not of a strictly ministerial character, but involve the exercise of official discretion which the Courts will not control by mandamus, in the absence of fraud or collusion.

*Decided March 22nd, 1909.*

Appeal from the Superior Court of Baltimore City (EL-LIOTT, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS, WORTHINGTON and HENRY, JJ.

*R. B. Tippett* and *Wm. S. Bansemer,* for the appellant.

The lowest bid was the appellant's, being $602.95 lower than that of Flannigan. Notwithstanding the fact that the appellant was the lowest responsible bidder, its bid was thrown out for one, and only one, reason. By sec. 9 of the specifications the bidder is required to deposit with his proposal a sample of granite block, stating at what quarry it was manufactured, and agree if the contract is awarded to him, to use only blocks made at said quarry and equal to the sample. The Maryland Pavement Company deposited a sample block which in itself met with the entire approbation of the City Engineer, but the block had no label upon it, stating from what quarry it came.

It can be seen from the whole testimony that the labeling of the sample block submitted by the Maryland Pavement Company, would have brought to the Board of Awards not an iota more information than it had when it acted. In fact, it would not have been at all considered by them had it been there. Mr. Fendall did not need the assurance of a label to become satisfied that the same was an "excellent" granite, and that it was in fact Woodstock granite. He knew the quality of the stone, and he knew the sample was Woodstock. What is the purpose of stating to him something about a granite block he already knew?

Even upon the strict literal construction contended for by the appellees there is nothing in section 9 that requires the sample block to be labeled. "Each bidder must deposit with his proposal a sample granite block *stating* at what quarry it was manufactured." Under the clause, no method of stating being specified, the bidder is entitled to convey the informa-

tion in any way he may deem fit; and if the City Engineer (with whom the samples are deposited), has that knowledge without any statement from the bidder, how useless is the formality for which the appellees contend. In this instance, the City Engineer knows from what run of granite or quarry the sample comes, and is satisfied with it. His duty, as a conscientious official, then should prompt him to recommend this lowest bid and the board's duty is to accept it.

"The primary duty of the public officers is to secure the most advantageous contract possible for accomplishing the work under their direction." *McQuillan Munic. Ordinances,* page 553.

It can be seen from Mr. Fendall's letter upon which the board acted, that only upon a "strict interpretation," can an informality be asserted. But informalities to count for anything must have some substance in them.

"Irregularities or informalities in the submission of bids will not generally invalidate them where there has been a *substantial compliance* with the provisions of the law or ordinance authorizing such action." See *Abbott Munic. Corporations,* pages 263, 590, which quotes *Baltimore* v. *Keyser,* 72 Md. 110.

The Court has no patience with a narrow construction of specifications, and with objections that departure have been made therefrom in matters of detail which are not material or substantial. *Baltimore* v. *Raymo,* 68 Md. 577, 578; *Baltimore* v. *Keyser, supra,* page 114; *Steffen* v. *Fox,* 124 Mo. 635; *Taylor* v. *Palmer,* 31 Cal. 241, 245; *Cole* v. *Shranka,* 37 Mo. App. 431, 432.

As was said in *Nelms* v. *Vaughan,* 84 Va. 700: "It is reasonable to infer that if intent had existed that every departure from the letter of the specifications should vitiate the bid, such intent would have been clearly manifested." "A statute directing the mode of proceeding by public officials is to be deemed directory and a precise compliance is not to be deemed essential to the validity of the proceedings unless so declared by the statute."

LORD MANSFIELD solves the question as to whether a statutory provision is mandatory or directory by judging whether the thing directed to be done was the essence of the thing required. *Rex.* v. *Loxdale,* 1 *Burrows,* 447. "The mere words are not controlling. The whole surroundings, the purposes \* \* \*, the ends to be accomplished, the consequences that may result from one meaning rather than another, and the cardinal rule that seemingly incongruous provisions shall be made to harmonize rather than conflict, must all be considered in determining whether particular words shall have a mandatory or directory effect ascribed to them." *Upshur* v. *Baltimore,* 94 Md. 757.

*Abbott (Munic. Corp.,* page 265), has well stated the rule as follows: "A trivial failure to comply with the formalities does not necessarily invalidate the proceedings, unless it appears that the purpose of the law to secure the most favorable bid was defeated."

The acceptance of the bids for this Monroe street paving and the consequent execution of a contract therefore depend upon section 15, of the Baltimore City charter. That section contains the mandatory provision that the award shall be made to the lowest responsible bidder. Its whole purpose, in establishing free and open competition, is the procurement of a public improvement as cheaply as possible, *i. e.,* at the lowest reasonable cost to the taxpayers. *Packard* v. *Hayes,* 94 Md. 233, quoted in *Baltimore* v. *Flack,* 104 Md. 143; *Baltimore* v. *Keyser,* 72 Md. 111; *Anderson* v. *Fuller,* 51 Fla. (1906), 390; *Abbott, Munic. Corp.,* sec. 265.

The fulfillment of this purpose is not to be frittered away at the cost of the taxpayers, by a strict and narrow and senseless construction of the specification requirements by a party who has no right to pass on them.

In judging as to whether the omission is material or not the Court looks to the paramount purpose of the plan under which the bidding was had and then determines whether the omission or irregularity is such as will defeat that purpose. *Saleno* v. *City of Neosho,* 127 Mo. 638.

*Sylvan Hayes Lauchheimer,* Deputy City Solicitor, (with whom was *Edgar Allan Poe,* City Solicitor, on the brief), for the appellees.

1. The ordinance which provided for the paving of Monroe street states that the specifications shall be prepared by the City Engineer. They were prepared by him and expressly required that each bidder must deposit with his proposal a sample granite block stating at what quarry it was manufactured and agree if the contract is awarded to him to use only blocks made at said quarry and equal to the sample. The petitioner failed to comply with this provision of the specifications.

It was, therefore, not even entitled to have its bid considered by the Board of Awards. "Where reasonable requirements have been prescribed as to the manner of bidding, such requirements must be complied with in order that a bid shall be entitled to consideration." 20 *Encyclopedia of Law,* pages 1167, 1168; *Matter of Marsh,* 83 N. Y. 431, 435; *Weed v. Beach,* 56 How. Pr. 470, 472; *State v. Cincinnati,* 3 Ohio Dec. 48, 50; *People v. Croton,* 26 Barb. 241, 243, 248; *May v. Detroit,* 2 Mich. N. P. 235, 237; *Wiggin v. Phil.,* 2 Brew. (Pa.) 444, 446; *Columbus v. Board,* 14 Ohio Dec. 715, 720, 721; *Flinn v. Strauss,* 87 Pacific, 414; *Gallagher v. Johns,* 31 Weekly Law Bulletin, 24.

"The officer calling for bids may and should publish any lawful restrictions by which he intends to exercise his discretion in awarding the contract, as to size, form, color, material and domestic production." 28 *Cyclopedia of Law,* pages 659-660.

These authorities make it obvious that the Board of Awards had the right to reject the bid filed by the petitioner because the City Engineer was authorized to prescribe the condition imposed by paragraph 9, and the petitioner was required to comply with this condition before it even had the right to have its bid considered by the Board of Awards.

That section 9 of the specifications is reasonable, can readily be gathered from the testimony of Mr. Fendall. The pro-

vision being inserted for the benefit of the city so that the contractor might be held to the strict performance of his contract and, in case of default therein, the city would have an easy way of pointing out his failure and insisting upon strict compliance with the contract; especially so, as anterior to the awarding of this contract, belgian blocks had been delivered in Baltimore of which the granite was soft and entirely unfit for paving, it was therefore manifestly proper to insert it, so that the city might be fully protected and be able to see to it that such belgian blocks only were used, which were actually fit for the purpose designed.

It might very well happen that in a dispute which could arise between the City Engineer's Department and the contractor, the possession of a particular block, as a sample, to which the blocks to be furnished by the contractor were to conform would prove to be a very useful precaution. In addition, the testimony of the City Engineer shows that, to some extent, the place from which the blocks are to come indicates the quality of the stone. And, certainly, when a proposed contractor designates the place from which he is to get his stone, he must, to some extent at least, bring to the attention of the City Engineer, the quality of the stone which he is likely to furnish. Even though a sample block might be furnished, the city would not be adequately protected, because if it was a question simply as to the quality of the paricular blocks furnished and a dispute arose, it would be necessary, practically, to take that sample block and compare it with every block offered to be furnished, because the single and only test to be applied as between the parties would be the test as to whether or not the blocks furnished came up to the quality of the particular block furnished as a sample. That fact, of itself, shows that if the City Engineer simply required a sample block to be furnished, whether it was to be furnished from one place or another, notwithstanding that, there would be no sufficient guarantee that the contractor, who had agreed to furnish the blocks was furnishing the proper blocks, and, what is by far, most important, there

would be no ready way to settle a dispute, which might arise between the City Engineer on the one side and the contractor on the other.   With the statement from what quarry the blocks are to be furnished, a dispute, if it arose, could be easily settled.

Of course the Board of Awards had the right to waive this provision, but it was under no obligation to do so and unless and until it did so, the petitioner had no right even to have his bid considered.   *Smith* v. *City,* 2 Brewst. (Pa.) 443, 444; *Case* v. *Trenton,* 68 Atlantic, 58; *Gage* v. *New York,* 97 N. Y. S. 157, 162.

These considerations make it plain that on this ground alone the Board of Awards was warranted in refusing to award the contract to the petitioner.   In addition, the advertisement in this case expressly provided that the Board of Awards reserves the right to reject any and all bids.   The petitioner bid, therefore, with full knowledge of this reservation and cannot complain.   *Keogh* v. *Wilmington,* 4 Del. Ch. 491, 499.

2. The petition contains the prayer to the Court to issue the writ of mandamus compelling the Board of Awards to award this contract to it, and to accept a duly executed bond and contract, in spite of the fact that the contract had already been awarded to Patrick Flanigan & Sons.   *There is no allegation or even suggestion of fraud in this case,* and that element being absent it becomes evident that the purpose of the petitioner is to have the Court substitute its discretion for the discretion of the Board of Awards, to which the discretion has been committed by the City Charter.

The City Charter (section 15) requires the Board of Awards to open all bids, and after opening them to award the contract to the "lowest responsible bidder."   The determination of the question as to who is the lowest responsible bidder requires the consideration of questions, other than merely financial ones.   The business judgment and capacity, skill, responsibility and reputation of the various bidders are and should be taken into consideration; and in the absence of

fraud the Court will not interfere with the action of the board to which has been committed the determination of the question who is the "lowest responsible bidder." 20 *Encyclopedia of Law,* page 1169; 28 *Cyclopedia of Law,* page 663; *Abbott on Municipal Corporations,* pages 603, 604; *Kelly* v. *Chicago,* 62 Ill. 280; *People* v. *Kent,* 160 Ill. 655; *Johnson* v. *Sanitary District,* 163 Ill. 285; *Wilson* v. *Trenton,* 60 N. J. L. 395; *Ryan* v. *Patterson,* 66 N. J. L. 533; *Trapp* v. *Newport,* 115 Ky. 840; *Reuting* v. *Titusville,* 175 Pa. St. 512; *Philadelphia* v. *Pemberton,* 208 Pa. St. 214; *Anderson* v. *Board,* 26 L. R. A. 710 (note); *East River Gas Light Company* v. *Donnelly,* 93 N. Y. 557; *People* v. *Gleason,* 121 N. Y. 631; *Erving* v. *Mayor,* 131 N. Y. 133; *State* v. *McGrath,* 91 Mo. 386; *State* v. *Commissioners,* 36 Ohio State, 126; *Douglas* v. *Commonwealth,* 108 Pa. State, 559; *Haale* v. *Kincaid,* 16 Nev. 217; *Case* v. *Trenton,* 68 Atlantic, 58.

The great weight of authority being to the effect that in the absence of fraud the Courts will not intervene, and no fraud being suggested in this case, the petition, of course, would, therefore, have been dismissed on the authorities quoted. We are, however, not compelled to rely upon the decisions of other Courts, this very subject has been considered by own Court of Appeals, by which the law of this State has been declared to be that when the letting of a contract has been committed to a board, in the absence of fraud, the determination of the board is absolutely final. *Madison* v. *Harbor Board,* 76 Md. 395; *Devin* v. *Belt,* 70 Md. 354; *Balto. C. & Pt. R. R. Co.* v. *Latrobe,* 81 Md. 246; *Henkel* v. *Milliard,* 97 Md. 30; *Baltimore City* v. *Flack,* 104 Md. 143.

The Board of Awards being compelled to determine upon the ability of the bidder to do the work, and the answer of the respondents not admitting the ability of the petitioner to do this work, and no evidence being offered to show that it could do the work, it might very well be that the Board of Awards took this into consideration when the contract was awarded to Patrick Flanigan & Sons.

3. Although it has been shown that the action of the Court was clearly right in dismissing the petition because of the failure of the petitioner to comply with the specifications, and because of the attempt to substitute the discretion of the Court for that of the Board of Awards; if the petitioner had any rights at all it should have filed a bill to enjoin the doing of the work, to set aside the award and to refer the entire matter back to the Board of Awards. Mandamus was not the proper remedy. *Akron* v. *France,* 4 Ohio Circuit Rep. 496; *Weed* v. *Beach,* 56 How. Pr. 470, 477; *People* v. *Croton,* 26 Barb. 241, 250; *Kelly* v. *Chicago,* 62 Ill. 279, 283.

4. The Court is asked in this case, notwithstanding the fact that the specifications required a thing to be done and the Board of Awards refused to award the contract for this reason, to override the determination of the Board of Awards and not to say that the contract shall not be awarded at all, but that this contract must be awarded to the petitioner, although it has failed to comply with the terms of the specifications. The statement of this proposition furnishes its own answer.

BRISCOE, J., delivered the opinion of the Court.

This appeal is from an order of the Superior Court of Baltimore City refusing a mandamus and dismissing the petitioner's application therefor. A statement of the facts will be necessary for an understanding of the case.

By Ordinance No. 258 of the Mayor and City Council of Baltimore, passed on the 9th day of April, 1907, the City Engineer was authorized and directed to have all that part of Monroe street from the southeast side of the Baltimore and Ohio Railroad tracks to the northwest side of Columbia avenue graded and paved with belgian blocks and curbed or recurbed where necessary with six (6) inch granite, gneiss, armored concrete or other curb, approved by the City Engineer; all of said work was to be done in accordance with specifications to be prepared by the City Engineer, who should advertise for proposals for doing the work.

On the 4th of March, 1908, Mr. Fendall, the City Engineer, published in the Baltimore Sun the following advertisement calling for proposals:

DEPARTMENT OF PUBLIC IMPROVEMENTS.
SUB-DEPARTMENT OF CITY ENGINEER.

BALTIMORE, March 4, 1908.

Separate sealed proposals, addressed to the Board of Awards, care of the City Engineer, will be received by the City Register at his office, City Hall, until 11 A. M., Wednesday, March 18th, 1908, to grade, curb and pave the following streets:

*With Belgian Blocks.*

Monroe Street from the southeast side of the B. & O. R. R. tracks to the northwest side of Columbia Avenue.

*With Vitrified Brick.*

Lakewood Avenue from the south curb line of Eastern Avenue to the north curb line of Canton Avenue.

Specifications and proposal sheets will be furnished upon application to this office. The Board of Awards reserves the right to reject any and all bids. A certified check on a clearing-house bank for an amount as recited in the specifications, made payable to the Mayor and City Council of Baltimore, must accompany each bid.

B. R. FENDALL,
City Engineer.

Approved:
J. BARRY MAHOOL,
President Board of Awards.

The specifications, which were subsequently presented to the bidders, contained this provision:

"None but the best materials of the several descriptions shall be used, and all material shall be equal in every respect to the requirements of the specifications and to the samples furnished.

"*Each bidder must deposit with his proposal a sample granite block, stating at what quarry it was manufactured and agree if the contract is awarded to him to use only blocks made at said quarry and equal to the sample.*"

It appears there were three bids submitted to the Board of Awards, and the contract for the paving of the street was on the 25th of March, 1908, awarded to P. Flanigan & Sons. The report of the City Engineer stated they were the lowest bidders who had complied with the specifications.

While it will be seen that the appellant's bid was the lowest in amount for the paving, it did not comply with the requirements of the specifications, that each bidder must deposit with his proposal a sample granite block, stating at what quarry it was manufactured and agreeing, if the contract was awarded to it, to use only blocks made at said quarry and equal to the sample.

The case was heard in the Court below upon petition, answer, traverse and joinder of issue to the defendant's answer to the paragraphs of the petition and proof.

The Court rejected the prayers on behalf of the petitioner and granted the prayer on behalf of the respondent, to the effect that no evidence has been offered legally sufficient under the pleadings to entitle the petitioner to the writ of mandamus, and that the verdict of the Court, sitting as a jury, must be for the defendant.

The questions presented for our consideration by the rulings of the Court upon the prayers and necessary for the determination of the case on this appeal practically come to this: (1) Was the failure of the appellant to comply with the specifications and proposals a sufficient reason for the refusal of the appellees to award the contract on the bid presented by it? (2) Is not the letting of contracts by the Board of Awards, like the one in question, to the lowest bidder, in the absence of fraud, absolutely final and beyond the control of the Courts by mandamus?

Now, in answer to the first inquiry it is only necessary to say that it is a rule of very general application, where reasonable requirements have been prescribed as to the manner of bidding, such requirements must be complied with in order that a bid shall be entitled to consideration. While slight irregularities in a bid not affecting its substantial characteris-

tics may be disregarded, yet the bid may be rejected for such reason and the Court will not interfere in the absence of fraud or collusion.    20 *A. & E. Ency. of Law,* 1167 and 1168; *Weed* v. *Beach,* 56 Howard Pr. 470; *People* v. *Croton,* 26 Barb. 241; *Wiggin* v. *Phil.,* 2 Brew (Pa.) 444.

There is no evidence in this case to show that the requirement in the proposal that each bidder should deposit a sample granite block, stating at what quarry it was manufactured, etc., was an unreasonable requirement.    On the contrary, it appears from the testimony of Mr. Fendall, the City Engineer, that this provision in the specifications was not only a reasonable one, but was inserted for the benefit and for the protection of the best interest of the City.

It is conceded that the appellant did not comply with the conditions of the specifications prepared and published by the City Engineer in this respect, and failing to so comply, we are of the opinion it had no right, under the authorities cited, to even have its bid considered by the Board of Awards.    28 *Cyc.* 659; *Smith* v. *City,* Brewst. Pa. 443; *Case* v. *Trenton,* 68 Atlantic, 58.

But, apart from this, the advertisement in this case by the City Engineer expressly provided that "the Board of Awards reserves the right to reject any and all bids."

In *Chicago Sanitary Dist.* v. *McMahon,* 110 Ill. App. 510, it is distinctly held that it is not unlawful where the lowest bidder has not conformed to the advertised requirements to let the contract to the next lowest bidder.    *Lauchheimer* v. *Phil.,* 15 Pa. Dist. 311; *State* v. *Cincinnati Bd.,* 4 Ohio Cir. Ct. 76.

While the requirement of a charter that a contract be awarded to the lowest bidder is mandatory, yet the authorities are uniform in holding that in determining who is the lowest responsible bidder the municipal authorities have a wide discretion, will not be controlled by the Courts except for arbitrary exercise, collusion or fraud, and they need not be guided in this determination solely by the question of the pecuniary responsibility of a bidder, but may consider his ability to respond to the requirements of the contract and his general

qualifications to properly execute the work.   28 *Cyc.* 1031; *Keogh* v. *Wilmington,* 4 Del. Ch. 491.

As to the second proposition but little need be said.   The subject has been frequently considered by this Court, and all the cases hold that when the awarding of a contract like the one here in question has been committed to a board, in the absence of fraud or collusion, its decision is final and conclusive and cannot be controlled by the Courts.

The case of *Madison* v. *Harbor Board,* 76 Md. 395, is directly in point and is decisive of this case.   The better doctrine, however, as to all cases of this nature and one which has the support of an almost uniform current of authority is that the duties of officers entrusted with the letting of contracts for works of public improvements to the lowest bidder are not duties of a strictly ministerial nature, but involve the exercise of such a degree of official discretion as to place them beyond the control of Courts by mandamus.   *Devin* v. *Belt,* 70 Md. 354; *Balto. C. & Pt. R. R. Co.* v. *Latrobe,* 81 Md. 246; *Henkel* v. *Millard,* 97 Md. 30; *Balto. City* v. *Flack,* 104 Md. 143; 28 *Cyc.* 663; 20 *Encyclc. of Law,* 1169.

There is no allegation or suggestion of fraud in the awarding of the contract in this case, and, without prolonging this opinion by a discussion of well- settled principles of law, we will affirm the order refusing the mandamus and dismissing the petition.

For the reasons stated there was no error in the rejection of the petitioner's prayers and in granting the respondents' prayer that no evidence had been offered legally sufficient under the pleadings to entitle the petitioners to the writ of mandamus.

*Order affirmed, with costs.*