GEORGE E. BIDDISON *v.* EZRA B. WHITMAN, ET AL., MARYLAND STATE ROADS COMMISSION

[No. 19, October Term, 1944.]

*Decided November 15, 1944.*

The cause was argued before MARBURY, C. J., GRASON, MELVIN, BAILEY, CAPPER, and HENDERSON, JJ.

*Albert A. Sapero,* with whom was *Lemuel Oliver* on the brief, for the appellant.

*K. T. Everngam,* Special Assistant Attorney General, with whom was *William C. Walsh,* Attorney General, on the brief, for the appellee.

GRASON, J., delivered the opinion of the Court.

In this case George E. Biddison, trading as The Asphalt Service Company (appellant), filed his amended bill of complaint as a tax payer and on behalf of other taxpayers who may come in and avail themselves of the

action, against Ezra B. Whitman, P. Watson Webb and W. Frank Thomas, Commissioners of the Maryland State Roads Commission (appellees). The Commission was the sole defendant and no taxpayer took advantage of the plaintiff's invitation to join him in this suit. The bill prays: (a) That the award of certain contracts made by the Commission be vacated and declared to be null and void; (b) that the Commission be enjoined from directing the individuals and firms to which contracts had been awarded from proceeding with the work under the contracts; (c) that the Court decree that the Commission award the contracts to appellant; and (d) a prayer for general relief.

From a decree, after answer and testimony, dismissing the amended bill, this appeal was taken.

In the Spring of 1943 appellees advertised proposal for resurfacing the State roads with tar. The roads were divided into six districts and bids were asked on the work to be done in each district. The amended bill does not allege fraud, but it does charge that appellant was the lowest bidder in five districts and that the action of the appellees in rejecting his bids was arbitrary, capricious and illegal. This the appellees deny, and it is the main question before this Court.

The bids were opened on March 9th and contracts awarded on March 24, 1943. Appellant submitted two sets of bids, one based on resurfacing the roads with asphalt and the other based on the use of tar. To each set of bids was attached a letter addressed to appellees and signed by appellant, which is as follows:

"In view of the fact that an alternate bid for Tar was considered on the Patch Letting last week where asphalt was requested. It is assumed that an alternate bid on asphalt where tar is requested on the surface treatment letting will be in order.

"In view of the fact that we have been unable to secure a price on tar for the State's requirements, we are submitting an alternate bid on asphalt of the same consistency.

"We respectfully request that you consider this bid, and if we should be the successful low bidder, we can assure you prompt and efficient service."

After the bids were opened and before the award, bidders were asked by appellees to furnish letters from suppliers of material, stating that the suppliers could and would furnish the material necessary to perform the work to the respective bidders. All bidders furnished such letters, except appellant. After appellees received these letters they checked with the supplier in order to be sure that each bidder had sufficient material to do the work, earmarked by the supplier for Commission use. The appellees were in constant touch with appellant during the interim between the opening of the bids and the awarding of contracts. On the night of March 23rd, Mr. Johnson, Manager of appellant, was in contact with Mr. Scrivener, Maintenance Engineer of the Commission. He told Scrivener that he could not get a price on tar to do the work, with the exception of District No. 2, and that Mr. Burleigh, of the Barrett Company (a supplier), stated he had enough tar for District No. 2, which he would earmark for appellant. Mr. Scrivener testified that Mr. Burleigh told him "that they could only give plaintiff enough tar for one district." The appellant never filed with appellees a letter as requested from a supplier stating that appellant would be supplied with enough tar to do the work and that the same had been earmarked for Commission use. Mr. Johnson also testified that they (appellant) could get plenty of tar from Eastern Tar or the Barrett Company, but that these companies had not earmarked this tar for them. That they were having difficulty getting a price quoted on tar (by this he means a price suitable to him), and that he is not aggrieved with the wholesalers in the tar market, because he is an asphalt man and they would not supply him with tar. The Commission had all of this before it when it awarded contracts. The question is: Was the Commission's action under the circumstances in this case, in not awarding contracts for five districts to the appellant,

arbirtary, capricious, and unlawful, even though on the face of the bids appellant was the lowest bidder?

Section 7 of Article 89B of the Annotated Code of Maryland, 1939, provides, in part, as follows:

"And reserving the right to reject any and all proposals; said proposals shall be publicly opened at the time specified in said advertisement, and the contract for such work or for the supplies and materials required for such construction shall be awarded by the Commission to the lowest responsible bidder, unless in the opinion of said Commission the interests of the State shall be better served by awarding the contract to some other bidder, when this may be done."

In *Maryland Pavement Company v. Mahool*, 110 Md. 397, 408, 72 A. 833, 834, the appellant's bid was the lowest in amount for paving, but it did not comply with the requirements of the specifications, that each bidder must deposit with his proposal a sample granite block, stating in what quarry it was manufactured and agreeing, if the contract was awarded to it, to use only blocks made at said quarry and equal to the sample. The questions pressed in that case were:

"(1) Was the failure of the appellant to comply with the specifications and proposals a sufficient reason for the refusal of the appellees to award the contract, on the bid presented by it? (2) Is not the letting of contracts by the board of awards, like the one in question, to the lowest bidder, in the absence of fraud, absolutely final and beyond the control of the courts by mandamus?"

The Court noted:

"But, apart from this, the advertisement in this case by the city engineer expressly provided that 'the board of awards reserves the right to reject any and all bids'."

Answering the first question the Court said:

"It is a rule of very general application, where reasonable requirements have been prescribed as to the manner of bidding, such requirements must be complied with, in order that a bid shall be entitled to consideration. While slight irregularities in a bid not affecting

its substantial characteristics may be disregarded, yet the bid may be rejected for such reason, and the court will not interfere, in the absence of fraud or collusion."

The opinion in that case proceeds:

"In *Chicago Sanitary Dist. v. McMahon,* 110 Ill. App. 510, it is distinctly held that it is not unlawful, where the lowest bidder has not conformed to the advertised requirements, to let the contract to the next lowest bidder. * * * While the requirement of a charter that a contract be awarded to the lowest bidder is mandatory, yet the authorities are uniform in holding that, in determining who is the lowest responsible bidder, the municipal authorities have a wide discretion, will not be controlled by the court except for arbitrary exercise, collusion or fraud, and they need not be guided in this determination solely by the question of the pecuniary responsibility of a bidder, but may consider *his ability to respond to the requirements of the contract* and his general qualifications to properly execute the work. * * * The subject has been frequently considered by this court, and all the cases hold that when the awarding of a contract like the one here in question has been committed to a board, in the absence of fraud or collusion, its decision is final and conclusive and cannot be controlled by the courts. * * * The better doctrine, however, as to all cases of this nature, and one which has the support of an almost uniform current of authority, is that the duties of officers intrusted with the letting of contracts for works of public improvements to the lowest bidder, are not duties of a strictly ministerial nature, but involve the exercise of such a degree of official discretion as to place them beyond the control of courts by mandamus."

In *Fuller Co. v. Elderkin,* 160 Md. 660, at page 665, 154 A. 548, at page 550, speaking of *Maryland Paving Co. v. Mahool,* supra, the Court said:

"In that case it was held that even such irregularities furnish ground for the rejection of a bid if the city elects to take advantage of them, but the clear infer-

ence is that they do not affect the legality and award. The statement that, 'where reasonable requirements have been prescribed as to the manner of bidding, such requirements must be complied with, in order that a bid shall be entitled to consideration,' clearly meant that compliance was necessary to enable the bidder to compell acceptance of his bid. * * * It is of much more importance that a public contract, like the one in question, should be promptly awarded, and speedily executed with due regard to economy, than that any particular bidder should get the contract (*Com. ex rel. Snyder v. Mitchell,* 82 Pa. 343) ; and therefore it has been held by the great weight of authority that the public work shall not be delayed by appeals to the courts of dissatisfied and disappointed bidders, but that the decision of public officers, like these commissioners, upon questions such as those here involved, shall not be reviewed by the courts unless it can be shown that such public officers have been guilty of fraud in the exercise of their discretion."

Appellant's letter, which was attached to each bid submitted, made it an integral part of the bids. The position that the appellant takes that it could get tar, but could not get a price on tar, is a mere subterfuge. It is a matter of common sense that you cannot buy something if the owner of the article will not name a price on it. However, definite appellant's bids based on tar were, this letter rendered them conditional. The bids were conditioned upon appellant's ability to furnish tar and they were, to say the least, irregular; for they show on their face that it was highly doubtful if appellant could respond to the requirements of the contract. These bids, therefore, fall within the class of irregular bids that "may be rejected for such reason and the Court will not interfere in the absence of fraud or collusion."

The year 1943 was a difficult one to secure materials. The nation was at war and the railroad facilities were swamped in carrying war materials and troops. The Commission found itself confined to such supplies as

could be furnished by local refineries. It was necessary for it to act promptly because neighboring States were in like situation and it was thought that these States might absorb local supplies and leave the Commission without material with which to resurface the roads. In this locality, due to the cold and freezing weather of our winter, the thaw that follows, and the heavy traffic which our roads carry, their surfaces buckle and crack and they become deteriorated and damaged. It is highly important and to the great interest and advantage to the public and users of our roads that the spring resurfacing be done. If their condition, following a winter, was not repaired, another year's use and another freeze would render our highways completely out of repair, if not dangerous to the public. The Commission, therefore, was dealing with a condition regarding the roads, which they were not only bound to deal with under the law but affected a wide and general public interest. The resurfacing of the roads has to be done in warm weather and cannot be done in cold weather. It was a rule of the Commission that this work be completed by September 15th, for after that date the weather might be too cold for resurfacing the roads, and the proposal required that the work be done prior to that time.

Appellees were correct in rejecting appellant's bids. He could not get a price on tar for all of the work. He did not file with the Commission a letter showing the source of his supply of tar and that it had been earmarked for the use of the Commission. His so-called bid was certainly irregular and "slight irregularities in a bid not affecting its substantial characteristics may be disregarded, yet the bid may be rejected for such reason and the Court will not interfere in the absence of fraud or collusion." *Maryland Paving Co. v. Mahool,* supra.

The Commission had the right to consider appellant's ability to respond to the requirements of the contract, and if he could not procure tar he could not per-

form the contract. We know that the law requires the Commission to award contracts to the lowest responsible bidder, but a bidder who is doubtful of his ability to procure material for the work may not be able to respond to the requirements of the contract. Reasonable requirements had been prescribed as to the manner of bidding and such requirements should have been complied with in order to entitle appellant's bids to consideration. The appellant cannot compel appellees to accept his conditional bids. We think this is a case which required the Commission to exercise a careful and cautious descretion in awarding the contracts to the end that the State roads be kept in good state of repair. The record in this case does not charge fraud on the part of the Commission in awarding these contracts, and its action in respect to appellant's bid was not arbitrary or capricious. This is a case where the Courts will not intefere with the discretion of the Commission.

*Decree affirmed, with costs to appellees.*