[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR TEMPORARY INJUNCTION
I.
The plaintiff C.J. Picard Corporation (hereinafter, "Picard") has brought the instant action seeking to enjoin the renovation of a building owned by the Hartford Dispensary Real Estate Inc. located at 19 Rockwell Avenue, New Britain, Connecticut, alleging that the bidding procedure involved corruption and favoritism. The plaintiff, an unsuccessful bidder, has sued the Hartford Dispensary (hereinafter, "the Dispensary"), a private 501c3 non profit corporation which intends to utilize the CT Page 10234 building as a methadone clinic, its director, Paul McLaughlin, and the successful bidder, New Brite Plumbing Piping Inc.
 II. a.
It is a well established rule that an unsuccessful bidder generally has no standing to challenge a bid award. As our Supreme Court has noted:
 [a] bid, even the lowest responsible one, submitted in response to an invitation for bids is only an offer which, until accepted by the municipality, does not give rise to a contract between the parties. John J. Brennan Construction Corporation, Inc. v. Shelton, 187 Conn. 695, 702
(1982), citing Joseph Rugo, Inc. v. Henson, 190 F. Sup. 281 (D. Conn. 1960); (remaining citations omitted). An unsuccessful bidder, therefore, has no legal or equitable right in the contract. Not unlike any other person whose offer has been rejected, the disappointed bidder has no right to judicial intervention.
Ardmare Construction Co. v. Freedman, 191 Conn. 497, 502
(1983). The court has carved out an exception to this rule in cases "where fraud, corruption or acts undermining the objective and integrity of the bidding process existed . . . ." Id., 504.
 b.
The Dispensary applied to the Department of Public Health and Addiction Services for a state grant to purchase and renovate the New Britain site. It received an application form from Norm Holland, Chief, Administrative and Fiscal Services, in August 1993 and submitted two applications, the first in August and the second in October 1993. On January 28, 1994, the Department awarded CT Page 10235 a grant in the sum of $300,000.00 — an amount well below the land cost of $285,000.00 and the proposed construction cost of $265,800.00. Hence, additional funds were obviously required to pay for the project.
Paul McLaughlin testified that he spoke with Senator Joseph Harper in April 1994 to obtain names of local contractors who might be interested in bidding the job. Senator Harper testified that he gave him the names of three contractors together with a description of their work. One of the three names was the defendant New Brite. Mr. McLaughlin independently called two contractors, a Peter Knaus and Diversified General Contractors.
As a result of some complications, including litigation with the City of New Britain, the project was delayed for a period of time. On August 2, 1994, an on site inspection was held with representatives from three prospective bidders: the plaintiff, C. J. Picard, Diversified General Contractors, and Colossale Concrete, Inc. As a result of the architect's dialing an incorrect telephone number, New Brite did not get notice of the inspection and was thus given the opportunity to inspect the next day. The bids were to contain separate cost breakdowns for the site work and the building renovation. They were submitted on August 12, 1994.
After opening the bids, Mr. McLaughlin called in the lowest bidders, C. J. Picard and New Brite for separate meetings. New Brite had submitted the lowest site work bid and Picard had submitted the lowest renovation bid (although when scrutinized more carefully, the site work bids were essentially the same). Mr. McLaughlin and his architect Jeff Baily had a number of follow up conversations with the two bidders and Mr. Baily actually changed each bid by eliminating or substituting a number of items. New Brite submitted a further revision in which its final bid was $20,000.00 more than that of C. J. Picard. The Hartford Dispensary ultimately awarded the contract to New Brite. As stated by Mr. McLaughlin, Picard was not chosen because Picard would not agree to performing just the renovation work, it would not agree to the proposed payment schedule, its bid contained a longer completion schedule (albeit by only 10 days) and finally, because Mr. McLaughlin felt uncomfortable about Picard's attitude. CT Page 10236
 c.
The thrust of Picard's challenge is that because it submitted the lowest bid and because it is a competent contractor, the selection of New Brite, a local contractor, must be deemed favoritism. Additionally, Mr. Picard wants this court to find that as Senator Harper was instrumental in obtaining the funding for the clinic and that as New Brite has a number of ties to Senator Harper, New Brite's selection must involve corruption. Picard introduced testimony that (1) New Brite performed work on Senator Harper's house in 1992 and 1993, and (2) New Brite's owner's son works with Mr. Harper in the appropriation office in the legislature and in a real estate firm as well as owning a small residential property with Mr. Harper. While all of this may be true, this court does not believe that the plaintiff has proved a case of corruption.
The plaintiff conceded that there is nothing wrong with Senator Harper recommending contractors. In his conversation with Mr. McLaughlin, he provided brief descriptions about each one. While there is certainly a connection between New Brite's owner son and Senator Harper, there was no testimony, other than the mere connection, that would suggest that any influence was brought to bear. Mr. McLaughlin only had one conversation with Mr. Harper and that was early April 1994. Admittedly, Mr. McLaughlin and Mr. Baily had a number of contacts with both the plaintiff and New Brite after the bid openings, but it is clear the Dispensary was honestly trying to reduce the cost of the project.
 d.
C.J. Picard also argues that as the lowest bidder, its application had to be accepted since public funding was involved. It argues that a policy memorandum issued by the Office of Policy and Management (OPM) requires that:
 Every contract for construction, reconstruction, remodeling, repair or demolition by a grant recipient using State Bond funds shall be awarded to the lowest responsible and qualified bidder on the basis of competitive bids. The lowest CT Page 10237 responsible and qualified bidder is the bidder whose bid is the lowest received and who possesses the skill, ability and integrity necessary to perform the work based on past performance and financial responsibility.
 Competitive bids should be sought through advertisement of the work specifications in a newspaper having substantial circulation in the area.
 If, following advertisement in the newspaper, a change is made to the specifications, the amended specifications should be readvertised to allow all potential bidders an opportunity to bid.
Evidence of this doctrine was introduced for both the 1993 and 1994 calendar years. The Dispensary argues that this policy is not applicable because (1) it was never made known to the Dispensary, (2) OPM exceeded its authority in issuing this policy and (3) assuming it had the authority, it never promulgated the policy in compliance with the Uniform Administrative Procedures Act, General Statutes, [§] 4-166 et seq.; Persico v. Maher, 191 Conn. 384, 405 (1983).
There seems to be no question that the policy was intended to be an inter agency memorandum applying to all state agencies. Nevertheless, the testimony indicated that the Dispensary applied for and was awarded the loan pursuant to forms, directives and procedures of the Connecticut Alcohol and Drug Abuse Commission — none of which contained the requirements in the policy memorandum. The specific question of the validity of the memorandum is not before this court and need not be addressed. This court, notes, however, that it certainly highlights the need for proper promulgation if the policy is intended to be a statement of general applicability. General Statutes § 4-168; Salmon Brook Convalescent Home v. Comm. onHospital and Health Care, 177 Conn. 356, 360-368 (1979). It is also worth mentioning that notwithstanding a number of statutes which contain lowest qualified bid requirements, General Statutes §§ 2-71p; 4a-59;4b-91, 7-339q; 8-44; 10-287;13a-95, none appear to apply to this CT Page 10238 situation. It is not for this Court to insert into the legislation, a provision not clearly stated therein. Statev. Fiasconaro, 25 Conn. App. 643, 645 (1991).
Finally, it is established law that where a regulation or statute states that the contract be awarded to the "lowest responsible bidder," the awarding authority has discretion to incorporate other factors besides lowest price in its determination. Vellaco v. Derby,27 Conn. Sup. 135, 137 (1966); 64 Am.Jur.2d, Public Works and Contracts, §§ 67-74. The memorandum in this case utilized the phrase "lowest responsible and qualified bidder." Thus, even if it did apply low price alone would not necessarily control. Obviously, the ability to exercise discretion does not mean that the authority can act arbitrarily; the award must be made in good faith. Id., § 68. In this case, the Picard bid was rejected for several reasons including Picard's failure or refusal to perform only part of the contract. Such an action has been deemed to be at variance with the invitation to bid and thus proper grounds for rejection. Maryland Pavement Co. v.Mahool, 72 A. 833, 834 (1909). New Brite was willing to perform only one segment of the work. Additionally, New Brite's time for performance was less than Picard's. The Dispensary clearly engaged in a competitive bidding process and although it did not take the lowest bid, the evidence does not show that it engaged in favoritism or that the process was corrupt. Ardmare Construction Co. v.Freedman, supra, 502; Vellaco v. Derby, supra, 138.
 e.
"A party seeking injunctive relief has the burden of alleging and proving irreparable harm and lack of an adequate remedy at law." Walton v. New Hartford, 223 Conn. 155,165 (1992). This court proceeded with this hearing as a result of the serious nature of the allegations in the complaint. Had the plaintiff been successful in proving its case, an injunction may have been warranted to preserve the status quo. Deming v. Bradstreet, 85 Conn. 650, 659
(1912). To obtain an injunction, the plaintiff must also show a lack of an adequate remedy at law and the plaintiff has introduced no evidence that it could not seek monetary damages for the loss of profit. It has not shown that it is without legal right. CT Page 10239
Moreover, in deciding whether to issue injunctive relief, courts of equity have been required to balance the relative hardships, inconvenience and injuries to the respective parties, Sisters of St. Joseph Corp. v. AtlasSand G S Co., 120 Conn. 168, 175 (1935); Connecticut Life Health Ins. Guaranty Association v. Daly, 35 Conn. Sup. 13,16-17 (1977). The clinic, when finished, will be serving 150 individuals who are seeking to overcome their addiction. It would be one thing to balance this against a corrupt bidding process but it is clearly something else to balance this intention against a plaintiff that at best would only suffer monetary damages. It is also important to note that the testimony indicated that this plaintiff, now complaining about the bidding process, was invited to bid by the architect and had a number of discussions with the architect prior to formal bid submission. Indeed, in at least one such conversation, figures were actually discussed. The equities simply do not tip to the plaintiff's side.
 III.
Having failed to meet its burden to prove favoritism or corruption in the bidding process and having failed to meet the necessary requirements for the issuance of an injunction, the requested injunctive relief is denied.
Berger, J.