[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO DISMISS 
Plaintiff Barber-Colman Cosentino, Inc. (Barber-Colman) brings this action in three counts seeking a temporary and permanent injunction prohibiting the Town of Manchester (the Town), acting through its Board of Education (BOE), from entering into a school energy conservation contract with defendant Honeywell, Inc.
As set forth more fully below, the Town of Manchester issued a Request for Proposal (RFP) for a multi-million dollar school energy conservation project. After receipt of responses from the plaintiff Barber-Colman, the defendant Honeywell and a third party, HEC, Inc., the defendants waived the competitive bidding obligations imposed by the Town Charter for contracts in excess of $7,500 and awarded the contract to Honeywell even though Honeywell's proposed contract price was approximately $3 million more than the lowest bid submitted by plaintiff Barber-Colman.
The circumstances surrounding the defendants waiver of the competitive bidding process as well as claims of favoritism, collusion and preferential treatment in the preparation design and execution of the RFP give rise to this action. In Count One the plaintiff alleges violations of Municipal Charter Provision § 5-22 in that the RFP was vague; the RFP was prepared by or modeled after one developed by Honeywell and that Honeywell was given an unfair preferential advantage by having received multiple opportunities to inspect and evaluate the energy systems of the fifteen schools which were the subject of the RFP.
Count Two alleges that the BOE's waiver of competitive bidding requirements is in violation of § 5-22 because it is not based on any of the specific criteria for waiver set forth in the Charter.
Count Three alleges that because the Town is receiving State assistance to fund the Project, Conn. Gen. Stat. § 10-287(b) CT Page 4025 requires the Town to award the contract to the "lowest responsible and qualified bidder", and that § 10-287(b) was violated because plaintiff, not Honeywell, was the lowest responsible bidder.
Defendant Honeywell now moves to dismiss this action, alleging that plaintiff Barber-Colman lacks standing to prosecute this action because:
1) plaintiff's bid was not responsive to the RFP;
2) plaintiff is not within the zone of interests protected by § 5-22 of the Charter;
3) plaintiff submitted a bid without first objecting to the alleged defects in the RFP that it now attempts to raise in this action; and
4) plaintiff did not receive state funds for this project pursuant to General Statutes § 10-278(b).
I. FACTS 
The relevant facts are as follows:
1) On December 11, 1995 the BOE issued an RFP to refurbish the energy and lighting systems in fourteen public schools in the town of Manchester.
2) The RFP reserved the BOE's right to reject any proposal it deemed "non responsive".
3) Under "Phase #l" of the RFP process, all "eligible" proposals would be publicly opened and later evaluated before the BOE chose a performance contractor.
4) The RFP did not contain detailed plans and specifications, but listed eight goals for the bidders to respond to:
 1. Improve comfort conditions. 2. Reduce energy costs. 3. Upgrade old and inefficient systems. 4. Enhance personnel development and training. 5. Improve utilization of technology. 6. Develop a long term plan for preventive maintenance. CT Page 4026 7. Removal of financial and technical risk. 8. Project to be self-funding.
5) Prospective vendors were required to complete a "walk-through" between December 19, 1995 and December 20, 1995.
6) Honeywell was provided access to the schools on multiple occasions prior to the official inspection period.
7) In response to the RFP, defendant Honeywell submitted a proposal with a total contract price of $4,309,500.84; HEC, Inc. (HEC) submitted a proposal with a total contract price of $1,719,570.00; and plaintiff Barber-Colman submitted a proposal with the lowest total contract price of $1,204,200.00.
8) Richard S. Borden, Jr. was the Business Manager for the Town at the time the RFP was issued. Borden was responsible for overseeing the RFP process, accepting the proposals on behalf of the BOE and reviewing the proposals to determine their responsiveness.
9) Mr. Borden had twenty-six; years experience as a town manager in the towns of Vernon, Cheshire, and Glastonbury, Connecticut prior to working with the town of Manchester. As a Town Manager he was responsible for the bidding and contracting of millions of dollars in municipal building projects, renovations, additions, ball fields, and energy conservation contracts.
10) According to Mr. Borden. the RFP sought to identify a qualified firm with technical experience in the area of energy conservation systems, the ability of that firm to finance the project and delivery by the firm of a self-funding energy conservation program.
11) Mr. Borden defines a responsive bid as one submitted by a firm qualified to perform the work in accordance with the contract specifications and one that also accurately responds to the RFP.
12) After reviewing the bids received from the plaintiff Barber-Colman. defendant Honeywell, and HEC. Inc., Mr. Borden concluded that the bids were responsive in that they specified the work to be performed, the costs of such work, the payback period and the types of equipment that would be installed. Having CT Page 4027 determined all three bids were responsive because they each materially complied with the bid requirements, Borden then submitted each to an Evaluation Committee which he had convened.
13) Mr. Borden established the Evaluation Committee for final review of the proposals due to the massive size of the bid documents, as well as the highly technical and complex nature of the data therein. Its purpose was to assist the BOE in reviewing the proposals and evaluating the bids the Evaluation Committee consisted of Mr. Borden, Mr. Francis Netherwood, the Director Buildings of Grounds, Mr. Chuck Cadman, project coordinator for Buildings Grounds, Mr. Terry Werkhoven, a former Mayor of Manchester, Mr. Charles Terrio, the maintenance foreman, and Mr. Maffe, the chairman of the building committee for the BOE.
14) After Mr. Borden had determined each of the bids to be responsive. Honeywell. HEC and Barber-Colman, then met independently with the Evaluation Committee, presented their proposals and answered questions about their proposals.
15) Neither Mr. Borden nor the Evaluation Committee concluded or advised Barber-Colman that its bid was non-responsive or otherwise indicated that defects in its submission rendered it non-responsive.
16) The Evaluation Committee selected Honeywell as the performance contractor and recommended that the BOE award Honeywell the contract.
17) On November 4, 1996, the BOE voted to approve the financing program for the Honeywell contract.
18) In response to the Evaluation Committee's recommendation and the BOE's financing approval, HEC and Barber-Colman protested the Board's proposed award of the contract to Honeywell, alleging that the RFP process was unfair and requesting that the contract be put out to bid again.
19) Specifically, Barber-Colman alleged that defendant Honeywell was given an unfair advantage to determine the Town's energy needs when it was permitted access to the buildings at issue well in advance of Barber-Colman and any other potential bidders, and also because it held private meetings with members of the BOE prior to the RFP in order to assess the Town's needs. Plaintiff further alleged favoritism in the bidding process in CT Page 4028 that Honeywell had input into the contents of the RFP, if not actually providing the Town with the specifications for the proposal, and also because Honeywell was allowed to submit specifications for fifteen buildings while the RFP only called for specifications on fourteen buildings.
20) On January 14, 1997, in response to concerns from members of the BOE and the Board of Directors of the Town that Honeywell was afforded preferential treatment in the RFP process, the BOE voted to waive the requirements of competitive bidding under § 5-22 stating:
 A question has subsequently been raised as to whether the Town Charter requirements for competitive bidding were met by the RFP process.
 It is also clear that a major portion of this contract is for professional services which do not require competitive bidding.
 The Town Attorney's Office has indicated that the RFP process would satisfy the competitive bidding requirements under Charter § 5-22 ; however, in order to put to rest all arguments regarding this issue, we are hereby waiving the requirement for competitive bidding.
21) On January 14, 1997, the BOE voted to authorize the award of the contract to Honeywell over the objections of Barber-Colman, as well as several BOE members who alleged violations of the competitive bidding process requirements of Municipal Charter Provision § 5-22.
22) On February 4, 1997 the Board of Directors for the Town of Manchester voted to authorize the execution of the Honeywell contract. Several Directors voted against awarding Honeywell the contract because they believed the requirements of competitive bidding under § 5-22 were violated by preferential treatment accorded Honeywell.
II. DISCUSSION OF LAW 
In their motion to dismiss for lack of subject matter jurisdiction, the defendants allege that the plaintiff does not have standing to bring this action.[1]
It is well established that a plaintiff must have standing to CT Page 4029 invoke the jurisdiction of the court. Unisys Corp. v. Departmentof Labor, 220 Conn. 689, 693 (1991) Standing is the legal right to set judicial machinery in motion. Hiland v. Ives,28 Conn. Sup. 243, 245 (1966). Without standing a party "cannot rightfully invoke the jurisdiction of the court unless that party has, in an individual or representative capacity, some real interest in the cause of action or a legal or equitable right, title or interest in the subject matter of the controversy".Tomlinson v. Board of Education, 226 Conn. 704, 717 (1993),quoting Ardmare Construction Co. Inc. v. Freedman,191 Conn. 497, 501 (1983). the plaintiff has the burden of proving standing. Sadloski v. Town of Manchester, 235 Conn. 637, 649
(1995). In the absence of standing, the court lacks subject matter jurisdiction and the action must be dismissed. Id. at 650. In ruling on a motion to dismiss the court must accept as true the allegations of the plaintiffs complaint. Id.
Our Supreme Court has consistently held that an unsuccessful bidder generally has no standing to challenge the award of a public contract. Ardmare Construction Co. v. Freedman, supra. at 501. However, the Court has also held that "where fraud, corruption, or favoritism has influenced the conduct of the bidding officials or when the very object and integrity of the competitive bidding process is defeated by the conduct of the municipal officials," then an unsuccessful bidder does have standing to challenge the award of a public contract. SpinielloConstruction Co. v. Town of Manchester, 189 Conn. 539, 544
(1983). See also, D.P.L. Refuse Service. Inc. v. City of Ansonia.et al., 1993 WL 214556 3 (Conn.Super.) (denying defendant's motion to strike plaintiff's complaint where sufficient acts were alleged which showed that "illegality and favoritism influenced the conduct of the bidding officials" and that such conduct "defeated the object and integrity of the bidding process");Applied Computer Security Products. Inc. v. Town of Trumbulland EAC. Inc., 1995 WL 774431 (Conn.Super.) (denying without prejudice defendant's motion to dismiss where plaintiff's complaint alleged favoritism and illegal bid procedures).
In this case, plaintiff Barber-Colman has alleged irregularities in the bidding process in that defendant Honeywell: 1) was provided advance meetings with the Town, allowing Honeywell to assess the Town's needs for the project; 2) was given an advanced opportunity to prepare for the RFP by private "walk-throughs" months ahead of the other bidders; 3) had input into the form and contents of the RFP; and 4) was allowed CT Page 4030 to submit specifications for fifteen buildings, whereas the RFP only called for specifications on fourteen buildings. As a result of these alleged acts of preferential treatment plaintiff asserts that the competitive bidding process was fundamentally flawed. In ruling on a motion to dismiss, the plaintiff's allegations must be accepted as true. Id. Under these circumstances, Barber-Colman has clearly asserted the type of favoritism and preferential treatment that questions "the very object and integrity of the competitive bidding process." Spiniello Construction Co. v. Townof Manchester, supra at 544. As such, Barber-Colman's allegations are sufficient to confer standing on it as an unsuccessful bidder to challenge the award of the contract to defendant Honeywell. Ardmare Construction Co. v. Freedman, supra.
Notwithstanding the plaintiff's allegations of improprieties in the bidding process, the defendant argues that this court lacks subject matter jurisdiction to adjudicate the plaintiff's claims because the plaintiff submitted a bid that was not responsive to the RFP. Honeywell claims that because plaintiff's bid was non responsive, plaintiff could not have been selected even in the absence of any improprieties, and that it therefore lacks standing to complain about the conduct of the bid process.
Honeywell alleges that plaintiff Barber-Colman's proposal was unresponsive in that it lacked the following items required by the RFP: 1) a detailed and definite offer to execute a performance contract, 2) final costs and savings figures, 3) final contract documents. 4) evidence that Barber-Colman could obtain the necessary financing for the project, 5) a summary of Barber-Colman's audited financial statement, and 6) a description of the quality and skills of it's local personnel.
A bidder whose bid is unresponsive to an RFP has no standing to challenge the award. Hartford Federation of Teachers Local1018 v. Hartford Board of Education, 1994 WL495175 2 (Conn.Super.) (holding plaintiff union lacked standing to invoke jurisdiction of the court where "proposal was non-responsive on its face"), citing Kennedy Temporaries v. Comptroller of theTreasury, 468 A.2d 1026 (Md.App. 1984) (holding that a bidder has" no legal status to challenge the award" of a public contract where the bid fails to qualify as responsive).See also, S.M.P Developers. Inc. v. Housing Authority of the Cityof Waterbury. 1990 WL271002 4 (Conn. Super) (upholding Housing Authority's rejection of bid which failed "to conform to the essential items of the invitation for bids"). CT Page 4031
While it is true that the court is empowered to determine the responsiveness of the plaintiff's bid for the purpose of determining whether or not the plaintiff has standing to challenge the award of the contract to Honeywell; see, e.g.,Unisys Corporation v. Department of Labor, 220 Conn. 689 (1991) (holding that where the specifications for the project were single-source, plaintiff would have standing if it could prove that it would have submitted a bid and that it's software was equivalent to that of the bidder chosen) and Hartford Federationof Teachers v. Hartford Board of Education, supra, 1994 WL495175 at 3 (Conn.Super.) (ruling that plaintiff union's alternate proposal to the Hartford Board of Education's RFP for management of Hartford's public school system deemed non-responsive where the proposal stressed that it was predicated on the failure of the City to meet the goal of the RFP); the defendants in this case have not brought to this court's attention any case in which a court has overruled a municipality's independent, good faith determination that a bid was responsive. For example in Hartford Federation of Teachers v. Hartford Board of Education, supra, the court determined on its own review that the plaintiff's proposal was clearly non-conforming in that the proposal specifically stated it was not being offered as a legitimate response to the RFP, but merely as an alternate in the event the RFP was unsuccessful. Likewise, in Unisys Corp. v. Department of Labor,supra, the court independently ascertained the elements of a responsive bid for the purpose of allowing the plaintiff an opportunity to prove that its bid would have been responsive.
In this case, unlike in Unisys and Hartford Federation ofTeachers, the defendants, acting through their duly authorized agents, explicitly evaluated and determined that the bid submitted by Barber-Colman was in fact responsive. First, Mr. Borden, in his capacity as business Manager, evaluated plaintiff's bid and concluded it was responsive. Thereafter the Evaluation Committee independently determined that Barber-Colman's bid responded to the RFP. Indeed, in determining that the competitive bidding requirement should be waived, the BOE itself did not suggest that the plaintiff's bid was unresponsive. Thus, in this case three layers of review failed to find, let alone even hint, that Barber-Colman's bid was unresponsive. Under these circumstances, this court will not intervene to substitute its judgment for that of the municipal agency and officials charged with evaluating the responsiveness of the bids in question. Gulf Oil Corporation v. Board of Selectmen,
CT Page 4032144 Conn. 61,65 (1956); Connecticut Hospital Assn. Inc. v. Commission onHospitals Health Care, 200 Conn. 133, 140 (1986) (agency's factual and discretionary determinations are to be accorded considerable weight by courts). See also, Maryland Pav. Co. v.Mahool, 110 Md. 397 (1909) (determination by the municipal authorities that a bidder has complied with the conditions imposed upon bidders, in the absence of fraud or collusion, is final and conclusive).
In this case, Honeywell has not identified any independent basis, other than its disagreement with the conclusions of the Business Manager and the Evaluation Committee, to reject their findings that Barber-Colman's bid was responsive to the RFP. There has been no suggestion that either Borden's or the Evaluation Committee's decision that Barber-Colman's bid was indeed responsive was fatally flawed by improprieties or irregularities in the review process such as fraud or collusion.
Mr. Borden, who has at least twenty-six; years of experience as a town manager reviewed all proposals submitted, determined they all were responsive, and accordingly submitted all three bids to the Evaluation Committee. The Evaluation Committee then met with each vendor and discussed the proposals, during which time it had ample opportunity to review plaintiff's proposal and reject it as non-responsive if it believed the bid did not comply with the RFP. Honeywell's claim that the plaintiff's bid was non-responsive contradicts the very conclusions of the defendant Town's own officials who were charged with evaluating the responsiveness of the bids in question. Under these circumstances, and in the absence of any evidence of improper conduct by Mr. Borden or the Evaluation Committee, this court will not substitute its judgment for that of the Business Manager of the BOE, the Evaluation Committee, and the BOE itself. See,e.g., Ardmare Construction v. Freedman, supra, 191 Conn. at 505
(upholding the Commissioner of Administrative Services' determination that the plaintiff's bid was non-responsive, stating, "the Commissioner made a good faith interpretation of the competitive bidding statute requirements, and applied it in a consistent fashion"). See also, S.M.P Developers. Inc. v. HousingAuthority of the City of Waterbury, supra, 1990 WL 271002 at 5 (affirming the Waterbury Housing Authority's determination that the plaintiff's bid was not responsive where the Waterbury Housing Authority "acted in good faith and did reasonably make decisions under the promulgated specifications for the project and the applicable federal procedures in rejecting S.M.P's bid"). CT Page 4033
The defendants further allege in their Motion to Dismiss that Barber-Colman, as a prospective recipient of a municipal contract, has no standing to challenge the BOE waiver of competitive bidding under Municipal Charter Provision § 5-22. Honeywell reasons that unless and until such a contract is executed, plaintiff has no interest in or right to that contract. As such, Honeywell alleges that Barber-Colman has not demonstrated a violation of a specific interest within the zone of interests which § 5-22 was enacted to protect, and therefore lacks standing to challenge the bid waiver under that provision. This court disagrees.
First, as previously noted, well established Connecticut authority has consistently held that allegations of the type made by the plaintiff in this action are sufficient to confer standing upon the plaintiff. Given the allegations of favoritism challenging "the very object and integrity of the bidding process"; Spiniello Construction Co. v. Town of Manchester,
supra; Barber-Colman has alleged a sufficiently specific interest to allow it to bring this action. See. e.g., Id., at187 Conn. 695 (1982) (holding unsuccessful bidder has standing to bring bid protest where allegations of favoritism were made); ArdmareConstruction v. Freedman, supra, 191 Conn. at 501 (1983) (noting that disappointed bidder has standing to challenge proposed bid award when allegations of fraud, favoritism, collusion, or any other conduct which undermines the purpose of the competitive bidding laws is alleged).
Second, defendants' claim that Barber-Colman lacks standing to challenge the waiver of the competitive bidding process has been addressed in Control Data Corp. v. The Controlling Board ofOhio 474 N.E.2d 336 (Ohio, Ct. App. 1983). In that case, the plaintiffs alleged, and the court concluded, that an unsuccessful bidder has standing to challenge waiver of the bidding process. The court's conclusion in that case is directly on point:
 [Control Data's] stake in the outcome of this dispute lies in its status as a prospective bidder for the contract to supply computer equipment and services to the lottery commission. The Controlling Board's decision to waive the competitive bidding requirements applicable to the lottery commission's purchase of computer equipment, and the necessary professional services to maintain it, denied [Control Data] any opportunity to bid on the contract and compete with [it's competitor] for the lottery funds. As such CT Page 4034 [Control Data] had a sufficient stake in the outcome of a judicial controversy to allow it standing to bring an action for declaratory and injunctive relief.
Id. at 33. Just as in Control Data Corp. v. The Controlling Boardof Ohio, supra, the defendants' actions in this case denied Barber-Colman its opportunity to bid for and be awarded the contract on the basis of competitive bidding. In it's complaint, plaintiff has clearly alleged that the defendant failed to comply with the waiver provision set forth in § 5-22. Specifically, in granting the waiver, the BOE simply asserted that the "RFP process would satisfy the competitive bidding requirement under Charter § 5-22; however, in order to put to rest all arguments regarding the issue, we are hereby waiving the requirement for competitive bidding." By its terms however, § 5-22 only permits a waiver under limited, specifically defined circumstances. A Board:
 "[m]ay waive the requirement of competitive bidding when the circumstances of a particular case do not permit sufficient amount of time to fulfill the rules and regulations of the Board concerning competitive bids, or when a competitive bid is inappropriate; or when a competitive bid is impractical and that the Boards are unable to obtain competitive bids within the rules and regulations adopted by said Boards, which may provide for a limitation on the number of waivers in favor of any one (1) firm, person or corporation. Any such waiver shall be in writing, certified by the appropriate Board, and shall set forth a specific substantial reason for such waiver and shall be filed in the Town Clerk's office as a public record.
Further, § 5-22 also requires the Board "to set forth a specific substantial reason for such waiver". In this case the defendants' express reason for waiving the bid requirements failed to reference any of the criteria in § 5-22, but instead merely offered a general statement that it wished to "put to rest all arguments regarding the issue. . ." The plaintiff has plainly alleged a violation of the relevant provision of § 5-22, and as such has standing to pursue this action.
Our Supreme Court has repeatedly emphasized that "[s]tanding is not a technical rule intended to keep aggrieved parties out of court, nor is it a test of substantive rights. It is designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions CT Page 4035 which effect the rights of others are forged from hot controversy, with each view fairly and vigorously represented."Unisys Corp. V. Department of Labor, supra. These requirements are met when a plaintiff makes a "colorable claim of direct injury he has suffered or is likely to suffer, in an individual or representative capacity." Id.
In this matter the plaintiff's allegations, which must be accepted as true for purposes of ruling on the defendants' motion to dismiss, allege favoritism and other improprieties in the process that raise serious questions concerning the circumstances surrounding the issuance of the RFP and the subsequent waiver of bidding requirements. Those allegations, which challenge the "very object and integrity of the competitive bidding process";Ardmare Construction Co v. Freedman: are sufficient to confer standing on the plaintiff to prosecute this action. Accordingly, the defendants' motion to dismiss is denied.
SO ORDERED.
Robert L. Holzberg, J.