# THE MAYOR AND CITY COUNCIL OF BALTIMORE

## *vs.*

## THE J. L. ROBINSON CONSTRUCTION COMPANY, A BODY CORPORATE.

*Building contracts: certified check with bid; forfeiture; bids not to be withdrawn. Baltimore City.*

Under section 15 of the Charter of Baltimore City, as amended by Chapter 163 of the Acts of 1908, the certified check, which a bidder upon City contracts, is required to deposit at the time of filing his bid, is forfeited, if, his bid being accepted, he fails to execute the contract and furnish the requisite bond.     p. 666

The bids filed under that section are irrevocable, and can not be withdrawn or altered after filing.                         p. 663

*Decided June 26th, 1914.*

Appeal from the Superior Court of Baltimore City. (BOND, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Alexander Preston, Deputy City Solicitor,* (with whom was *S. S. Field, City Solicitor,* on the brief), for the appellant.

*Forrest Bramble* (with whom was *W. W. Lingenfelder* on the brief), for the appellees.

CONSTABLE, J., delivered the opinion of the Court.

This appeal involves the right of a bidder, for a municipal contract, to recover from the municipality the amount of money deposited at the time of submitting the bid, where the bidder requests the withdrawal of the proposal before the opening of the same by the municipal officers.

The facts upon which the declaration is based are uncontradicted, and from them it appears that the appellant acting through the Board of Awards advertised for proposals and bids to construct a school house in the City of Baltimore. That the appellee, among others, submitted a proposal for said construction and in compliance with the advertisement and the provisions of the City Charter filed therewith a certified check for five hundred dollars. On the day the bids were to be opened, and just before they were opened, the president of the appellee company stated to the board that he thought from the information he had gained from the other bidders present that he had made an error in his proposal, and requested to withdraw the same. He had learned that the amount of his bid was very much below that of the others, and so much lower that he felt assured a mistake had been made. The board refused to allow the bid to be withdrawn and proceeded to open all of the bids, whereupon it was found that the appellee's bid was the lowest by about fourteen thousand dollars. After the opening the board suggested to the representative of the appellee that he go over the estimate for the purpose of discovering where, if at all, the mistake was. It was found that in making up the general tabulation of the costs of the various items, including

the bids of the sub-contractors, that the amount for heating and ventilating had been put down at $952.13 while it should have been $11,952.13, the amount of the sub-contractor's bid, thus making the total of the bid $11,000 less than had been intended. The board, however, awarded the contract to the appellee, which refused to execute the formal contract. Whereupon the board declared the deposit forfeited and re-advertised for bids. This suit was then instituted for a return of the five hundred dollars deposited.

The appellant demurred to the declaration, but the Court overruled the demurrer, and the rulings upon the prayers being in favor of the right of action, the appellant has brought this appeal from the judgment rendered against it. The rulings upon the demurrer and the prayers involve one and the same principle of law so they will be considered as a whole.

An Act of the Legislature regulates proposals for contracts with the City of Baltimore. Section 15 of the charter, as amended by Chapter 163 of the Acts of 1908, provides as follows:

"All bids made to the Mayor and City Council of Baltimore for supplies or work for any purposes whatever, unless otherwise provided in this article, shall be opened by a board, or a majority of them, consisting of the Mayor, who shall be President of the same; the Comptroller, City Register, City Solicitor, and the President of the Second Branch, which board, or majority of them, shall, after opening said bids, award the contract to the lowest responsible bidder. * * * Bids when filed shall be irrevocable. The successful bidder shall promptly execute a formal contract, to be approved, as to its form, terms and conditions by the City Solicitor, and he shall also execute and deliver to the Mayor a good and sufficient bond, to be approved by the Mayor, in the amount of the contract price. To all such bids there shall be attached a certified check of the bidder upon some clearing house bank, and the bidder who has had the contract award-

ed to him, and who fails to promptly and properly
execute the required contract and bond, shall forfeit
said check. The said check shall be taken and con-
sidered as liquidated damages and not a penalty for
failure of said bidder to execute said contract and
bond. Upon the execution of said contract and bond
by the successful bidder the said check shall be re-
turned to him. The amount of said check shall be
five hundred dollars, unless otherwise provided by ordi-
nance, or an order or regulation of the department
for whose use the bids are made and contract entered
into. The checks of the unsuccesful bidders shall be
returned to them after opening the bids and award-
ing the contract to the successful bidders."

In the face of these provisions can a bidder, refusing to
execute a contract awarded to him for municipal work, force
the return of his deposit? Or once having filed his proposal,
can he withdraw it before the bid is accepted and recover
his deposit?

It will be noticed that, in plain terms, the section directs
that the bidder shall deposit a certified check to indemnify
the city in case he, as the successful bidder, fails to execute
the contract and furnish a bond; that bids when filed are
irrevocable; and that the contract shall be awarded to the
lowest responsible bidder. It certainly must be that there
was the intention that these explicit directions should have
some force and meaning. We must ascribe a reasonable con-
struction to them or we render the statute a mere nullity.
These provisions involve the preliminary steps to the making
of the contract for the work to be done. These are the condi-
tions which must be subscribed to by anyone who wishes to
be in a position to get a contract with the city. They do not
make the proposal and the acceptance the contract, but the
formal contract is to be entered into later. They make plain
to the bidder just what obligation he is entering upon when
he submits a bid. He knows that his bid is irrevocable, but

he further knows that if he, for any reason, after his bid is accepted, does not want to enter into a contract the condition of his becoming a bidder obligates him expressly to reimburse the city to the extent of five hundred dollars damages. If the contract were made by the bid and acceptance the bidder then would be compelled to carry it out or be responsible for it, unless a Court of Equity, for sufficient cause, should relieve him, by rescinding the contract.

JUDGE DILLON in his work on *Municipal Corporations* at Section 810 (5th Ed.) expresses the meaning and effect of such a charter provision: "After the opening of the bids, the ascertainment of the lowest or most favorable bidder, and the adoption of a resolution that, the contract be awarded to him does not make a completed contract between the municipality and the bidder, when the charter requires that all contracts relating to city affairs shall be in writing, or when the advertisement so specifies or when some further step remains to be taken * * * where a bidder accompanies his bid for the performance of a public work with the deposit of a certain sum, under an agreement to forfeit the sum deposited in case of his neglect or refusal to enter into the contract for the work, and without default on the part of the board, he fails to execute the contract he cannot recover back his deposit, and the board may declare the same forfeited."

And McQUILLIN on *Municipal Corporations,* at section 1221, says: "Money accompanying a bid as security that the bidder will enter into a contract if his bid is accepted, cannot be recovered if the bidder fails to enter into the contract. The rule that Courts incline against forfeitures has no application to such a case, and the rule is never carried to the extent of relieving parties against the express terms of their own contract. A bidder has no right to withdraw his bid even before the bids are opened, nor have the municipal authorities the right to permit him to withdraw it."

Also in 28 *Cyc.* 661: "A bidder has no right at law, nor have the municipal officers power to permit him to withdraw his bid and deposit."

In *Wheaton Building Company* v. *Boston,* 204 Mass. 218, a contractor had filed a bid with the proper authorities to build a school house, and was required to file a deposit with his bid. Afterwards he found that he had made a mistake in his estimates and sued the City for the recovery of his deposit. This case is practically identical with the one at bar. The Massachusetts Court held that he could not recover his deposit and said on pages 222 and 223: "But it is plain that the statute contemplated some obligation on the part of the bidders, even though there was none on the part of the city. Statutes of 1890, Chapter 418, Section 5, provides that every proposal shall be accompanied * * * by a check or certificate of deposit for the faithful performance of such proposal." * * * This section must be given reasonable effect. It would be a nullity if it should be held that the bidder was at liberty to withdraw, without any liability, at any time before the formal contract, which alone could bind the city, was executed. The reasonable construction is to hold that the bidder is bound to stand by his proposal at least after its acceptance, and to the extent of his bond or deposit, but no further. If the case was free from statutory regulation, and it did not appear that a more formal contract was contemplated, the mere acceptance of the proposal would constitute a contract, and neither party could refuse to carry it out without becoming liable for all the damage sustained. The Legislature, perhaps in recognition of the hardships which might follow from requiring the bidder to be bound though the city was not, restricted the liability of the former to the extent of the deposit."

To the same effect is *Robinson* v. *Board of Education,* 98 Ill. App. 100, where the bidder asked, before the bids were opened, to withdraw his bid because a mistake had been made by him. Also the same ruling in *Village of Morgan*

*Park* v. *Gahan,* 136 Ill. 523; *Turner* v. *Fremont,* 170 Fed. 259; *Davin* v. *Syracuse,* 126 N. Y. Sup. 1002.

This may seem a hardship upon a bidder who has actually made a mistake, but if the statute is to have any effect that must be the result. The statute is an essential part of the proposal and the bidder makes all its terms and conditions an obligation upon himself by submitting a bid. While it may appear a hardship upon the bidder. the practical side, as illustrated by this record, of awarding contracts by closed bidding, shows it to be a wise provison for municipalities. After the bids were all in, and before the bids were opened, this appellee easily ascertained from his competitors the amounts of their bids. What would there then be to prevent a dishonest bidder, upon finding that his bid was extremely low, from declaring that he had made a mistake and thus put the city to the costs of delay and re-advertising?

The case of *Moffett* v. *Rochester,* 178 U. S. 373, relied upon by the appellee, was upon a bill in equity for a reformation of the proposal and therefore is not authority for the form of action in this case. In fact, all of the cases, cited by the appellee, are cases in equity and in the most of them there was no statute involved.

> *Judgment reversed, without awarding a new trial, with costs to the appellant.*