MAYOR AND CITY COUNCIL OF BALTIMORE
ET AL. *v.* DeLUCA-DAVIS CONSTRUCTION
COMPANY, INC.

BROOKLYN ENGINEERING CORPORATION
*v.* SAME

[No. 220, October Term, 1955.]

(Two Appeals In One Record)

*Decided July 12, 1956.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*F. Clifford Hane, Assistant City Solicitor of Baltimore,* with whom were *Thomas N. Biddison, City Solicitor,* and *Edwin Harlan, Deputy City Solicitor,* on the brief for Mayor and City Council of Baltimore and Board of Estimates of Baltimore; and *R. Samuel Jett* and *Paul F. Due,* with whom were *W. Hamilton Whiteford* and *R. Frederick Jett* on the brief, for Brooklyn Engineering Corporation, appellants.

*Harry N. Baetjer* and *Richard W. Emory* for appellee.

HAMMOND, J., delivered the opinion of the Court.

The Bureau of Highways of the Mayor and City Council of Baltimore issued a notice of letting of a contract for the construction of the Jones Falls Expressway storm water conduits and, in response, DeLuca-Davis Construction Co., Inc., the appellee, submitted a bid that by reason of clerical error was at least $589,880.00 less than it intended it to be, and some $700,000.00 less than the engineer's estimate and the

next lowest bid. The sealed bids of all bidders, including that of the appellee, were opened at noon on January 25, 1956, by the Board of Estimates and referred to the Board of Public Works for tabulation and recommendation. As soon as the bids were announced, the appellee realized that it had made a mistake. After several hours of checking, the precise form of the mistake was turned up and the Director of Public Works was notified immediately. Five days after the bids were opened, DeLuca-Davis wrote the Board of Estimates, explaining in detail how the mistake had occurred and that the actual bid should be $2,385,944.25 instead of $1,796,064.25, the bid submitted. The letter requested the Board either to correct the bid accordingly or to return the bid and the certified check for $50,000.00, which had accompanied it pursuant to the applicable charter provisions and the notice of letting. Being advised that the Board proposed to accept the original bid, the appellee filed a bill of complaint in the Circuit Court of Baltimore City, praying a mandatory injunction or decree commanding the Board of Estimates either to correct or reform its mistaken bid and to take no action thereon unless it had been corrected or, in the alternative, that the court permit the appellee to rescind the bid and have both the bid and the certified check returned. A demurrer to the bill by the City was sustained as to the right to rescind and over-ruled as to the right to reform and, after testimony was taken, the chancellor decreed that the contractor be authorized and empowered to reform and correct the bid unit from $6.00 to $16.00 in both Items 2 and 11 of the bid, the bid total of Item 2 from $349,800 to $932,800 and the bid total of Item 11 from $4,128 to $11,008, and the total amount of the bid from $1,796,064.25 to $2,385,944.25. The decree further provided that the Board of Estimates be "directed to receive the complainant's bid or proposal as so reformed and corrected in lieu of the mistaken bid." The City appeals from the decree, urging error in it and in the over-ruling of the demurrer.

The testimony shows that the estimator for DeLuca-Davis, a qualified engineer, prepared the figures for the bid. In calculating the cost of Item 2, the unclassified excavation other

than for the post office wall, the estimated number of cubic yards was divided into the estimated dollar cost to obtain a unit cost of $13.34 per cubic yard. The same unit cost was applied to Item 11—unclassified excavation for post office wall. This unit cost was approved by the president and co-owner of DeLuca-Davis. On the afternoon before the bid was submitted, the estimator prepared a summary sheet showing all costs of the job, and the bid was written up from this summary sheet. In transferring the estimated unit cost for unclassified excavation of $13.34 per cubic yard from the detail work sheet to the summary sheet the estimator by mistake entered the figure of $3.34 for Item 2 and Item 11. There seems little doubt that the mistake came about because the first figure in $13.34 —the figure "1"—was on a vertical ruled line in the work sheet apparently accentuated by the paper having been folded. The unit cost price of $3.34 was not used in preparing the bid as the bid unit price to multiply the quantity of cubic yards figured on, but instead a figure of $6.00 was used. The difference between $3.34 and $6.00 represented the proportion of overhead and profit allocated to the unclassified excavation item. In its letter to the Board of Estimates and in its bill of complaint, the appellee contends that the bid unit price for Items 2 and 11 should be $16.00 instead of $6.00, which increases the bid total for Item 2 from $349,800 as filed to $932,800 and the bid total of Item 11 from $4,128 as filed to $11,008, or an increase in the total bid of $589,880.00. The testimony of the president of DeLuca-Davis was that if it had been realized before the bid was sent in that the unit price for the unclassified excavation was $13.34 instead of $3.34, the bid unit price would not have been $16.00, as it was sought to be corrected to, but would have been some figure greater than that. He said that the figure of $2,385,944.25 was not the figure he would have estimated and bid if he had realized that $13.34 was the correct unit price. He added that when his counsel asked whether, if the City allowed correction, he wanted to add overhead and profit to the unclassified excavation unit price in an amount greater than was in the original bid, he had answered: "I told him no, I was not interested in that part of it, all I wanted him to do was to correct the mistake

of $10.00 that was made * * *." In response to a question from counsel for the next lowest bidder (who had been permitted to intervene in the case), he said: "* * * I had no way of knowing * * * whether my price would have been below yours or above yours * * *" if the bid had been prepared from the correct figures.

It was shown further that the net worth of DeLuca-Davis was $82,000.00, that if it were compelled to perform the contract at the original bid, it would suffer a loss of over $400,000.00 and that it could not obtain a bond if the job were to be done at the original estimate. There was testimony that there was a general perceptible reaction in the room when the appellee's bid was opened and announced—a realization that something was wrong, that there was an error in the bid. It was shown that the mistake was a bona fide, clerical and mechanical error. The estimator demonstrated how the mistake had occurred and the two co-owners of DeLuca-Davis both testified that they neither knew of, nor suspected, the mistake until the bid was opened. They testified also that they had not known of the engineer's estimate—which was $700,000 more than their bid—before preparing their own bid. The chancellor made the following findings of fact, which the appellants do not seriously challenge and which are supported by the record: 1, there was an error in the bid of the appellee which was entirely clerical and mechanical; 2, the error was material and substantial; 3, the error was palpable and the City, as soon as the bids were opened, either knew or should have known that there was a substantial error in the bid; 4, the error was made in absolute good faith.

The Baltimore City Charter, Flack (1949), Sec. 38, provides that the Board of Estimates shall award a contract required to be let by sealed competitive bids * * * "to the lowest responsible bidder * * * or shall reject all bids." It provides further that "Bids when filed shall be irrevocable." The successful bidder must execute a formal contract and a bond in the amount of the contract price. All bids must be accompanied by a certified check for an amount specified in each case and a bidder to whom the contract is awarded, who fails to execute the required contract and bond, forfeits the

deposit check as liquidated damages. The notice of letting incorporated all the requirements of the Charter. The City contends that the Charter provisions are peremptory and leave no discretion to either party. It argues that the bidder knows exactly his liability and its extent if he receives the award and refuses to accept the contract. He has agreed that his bid once made is irrevocable and has further agreed that he has damaged the City to the extent of the amount of the certified check filed with the bid, and so, in legal contemplation, cannot ever be said to have made a mistake in the amount of the bid because he has guaranteed in advance that any error he makes shall be at his own expense and not at the cost of the City. The City goes on to urge that for these reasons there can be neither reformation of the bid nor cancellation of it and return of the deposit, and that its contentions were established by the decision of this Court in *M. & C. C. of Baltimore v. Robinson Con. Co.,* 123 Md. 660.

It is manifest to us that the City is correct in saying that there cannot be reformation, for at least two reasons. In the first place, to warrant the equitable remedy of reformation the mistake must have been mutual. *Phelps, Juridical Equity,* Sec. 227; *Dulany v. Rogers,* 50 Md. 524, 533; *Stiles v. Willis,* 66 Md. 552; *Miller v. Stuart,* 107 Md. 23; *White v. Shaffer,* 130 Md. 351, 360, 361; *England v. Gardiner,* 154 Md. 510, 514, 515; *Brockmeyer v. Norris,* 177 Md. 466; *Hoffman v. Chapman,* 182 Md. 208. See also *Com. De Astral v. Boston Metals Co.,* 205 Md. 237, 271. Here the mistake was entirely that of the contractor and not induced by any act or omission of the City, so that it is entirely unilateral even under the perhaps fictional theory that if the act of one party is induced by the other, the mistake is mutual. More important than the first reason why there cannot be reformation is the second, namely, that a court will never in the name of reformation rewrite a contract or make a contract for the parties or act unless there is clear, convincing and satisfying proof of a mutual understanding and bargain that has not been accurately expressed. *Phelps, Juridical Equity,* Sec. 227; *Second National Bank v. Wrightson,* 63 Md. 81; *Keedy v. Nally,* 63 Md. 311; *Milligan v. Pleasants,* 74 Md. 8; *Hesson*

*v. Hesson,* 121 Md. 626; *White v. Shaffer,* 130 Md. 351, *supra; England v. Gardiner,* 154 Md. 510, *supra; Hoffman v. Chapman,* 182 Md. 208, *supra; Martz v. Jones,* 189 Md. 416; *Com. De Astral v. Boston Metals Co.,* 205 Md. 237, 271, *supra; Pomeroy, Equity Jurisprudence,* 5th Ed., Sec. 870 a; 5 *Williston, Contracts,* Revised Edition, Sec. 1548, p. 4339; *Restatement, Contracts,* Sec. 504.

DeLuca-Davis did not seek merely to make a mechanical correction, such as correctly multiplying the number of cubic yards by the real unit price but, in effect, made a new bid after the mistake was discovered. To determine the amount of this bid judgment had to be exercised. Its president, in the exercise of this unilateral judgment, decided that it would not do what it would have done if the true facts had been known when the original bid was made, but rather, that the revised bid would be figured by the use of the original unit price without any increase attributable to overhead and profit— merely to add back the $10 omitted from the unit cost of excavation and not add overhead and profit as he would normally have done. To permit to be done what the appellee seeks to do, would not only run entirely counter to the underlying principle of reformation, which is merely to correct a mistake in the expression of what had been mutually agreed upon, but would also completely nullify the purpose and the safeguards of the competitive bidding system established by the City Charter. We have found no authority that has permitted reformation in a situation such as the one before us. Sometimes it has been suggested, as the appellee suggests in this case, that *Moffett, Hodgkins & Clarke Co. v. Rochester,* 178 U. S. 373, 44 L. Ed. 1108, stands for the proposition that an erroneous bid promptly repudiated may be reformed but a reading of the case shows that this is not so. *Lemoge Electric v. County of San Mateo* (Calif. App.), 288 P. 2d 518, denied reformation of a clerical mistake made by a contractor in a bid and suggested that rescission would be a proper remedy, and the Court, noting that the *Moffett* case was the only case that had been cited as authority for reformation in such a situation, said: "What was said of reformation in that case is the baldest dictum, since reformation had been

rendered impossible before that case reached the court. * * * It furnishes no such authority as we have pointed out." We find the chancellor to have been wrong in permitting reformation in the case before us.

Turning to the question of cancellation of the bid, it is plain to us that had the parties here been two individuals there is no doubt that a court of equity would have had the power, and on the facts of the case the duty, to decree rescission of the bid and the return of the deposit. Our concern has been whether the same standard applies where one of the parties is a public body controlled, as are the bidders who seek to do its building, by statutory provisions for the elimination, in the public interest, of unfairness or favoritism, or whether the relief in such cases has been foreclosed by *M. & C. C. of Baltimore v. Robinson Con. Co., supra.* We have concluded that the sound weight of authority is that recission may be decreed as against a municipal or other public body by a court of equity, and that the *Robinson* case is distinguishable and not controlling.

Although reformation requires that the mistake be mutual, rescission may be granted whether the mistake be that of one or of both of the parties. *Phelps, Juridical Equity,* Sec. 227. Williston, leader of the objective theory of contracts, is critical of the rule that rescission may be had for a unilateral mistake, as was noted by Judge Henderson for the Court in *Kappelman v. Bowie,* 201 Md. 86, 90. Nevertheless, Williston recognizes that many courts have held that there may be such relief. 5 *Williston on Contracts,* Rev. Ed., Sec. 1578, p. 4409, says: "* * * some cases afford countenance for the doctrine that unilateral mistake, while the contract is still executory and the parties can be put *in statu quo,* may afford ground for rescission * * *. Rescission has been most frequently sought where a price was bid which because of erroneous arithmetical processes or by the omission of items was based on a mistake. Relief has been allowed in several cases of this and other kinds, though denied in others. In some of them, at least, it would seem that the party not in error should have suspected the existence of a mistake, in

which case clearly rescission and restitution should be allowed." The American Law Institute agrees with the sentiments expressed in the sentence last quoted. *Restatement, Contracts,* Sec. 505; *Restatement, Restitution,* Sec. 12. So does *Black, Rescission and Cancellation,* 2nd Ed., Sec. 130. He says of a unilateral mistake known to and sought to be taken advantage of by the other party: "* * * equity will sometimes relieve a person from the consequences of his unfortunate blunder, but will never enable another to take advantage of it * * * Where the party to whom an offer is made is fully aware that it has been made under a mistake, and would not have been made but for such mistake, he cannot, by accepting it with such knowledge, hold the other to a binding contract." The general rule as to the conditions precedent to rescission for unilateral mistakes may be summarized thus: 1, the mistake must be of such grave consequences that to enforce the contract as made or offered would be unconscionable; 2, the mistake must relate to a material feature of the contract; 3, the mistake must not have come about because of the violation of a positive legal duty or from culpable negligence; 4, the other party must be put *in statu quo* to the extent that he suffers no serious prejudice except the loss of his bargain. See the cases so holding collected in the annotation in 59 *A. L. R.* 809. The rule as stated was recognized in *Gross v. Stone,* 173 Md. 653, 665; and in *Hoffman v. Chapman,* 182 Md. 208, *supra.* See, too, *Kappelman v. Bowie,* 201 Md. 86, where specific performance was denied on the ground of unilateral mistake. It was argued by the losing side in that case that to justify relief the mistake would have had to be mutual unless induced by the opposite party. The Court said: "The contention overlooks the true basis for the rule, which is rooted in the proposition that equity may refuse the extraordinary remedy of specific performance where to do so would enforce a hard bargain, at least where the mistaken party was not grossly negligent and the opposite party would not be prejudiced except to the extent of losing a windfall. It may be that this recognition of a unilateral mistake as a defense is inconsistent with the objective theory of contracts, *to the extent that it permits the rescission of an*

*executory contract on equitable grounds.* Cf. *Williston, Contracts* (Rev. Ed.) Sec. 1579." (Emphasis supplied.)

There are numerous cases in many states that have granted contractors cancellation of bids based on clerical, material, palpable, bona fide mistakes. Where, as in the case at bar, the mistake has been brought to the attention of the contracting authority before the acceptance of the bid, the courts have been almost unanimous in granting relief. Some of the decisions are collected in the annotations in 80 *A. L. R.* 586, and 107 *A. L. R.* 1451. See, too, *Corbin on Contracts,* Vol. 3, Sec. 609; *Lubell, Unilateral Palpable and Impalpable Mistake in Construction Contracts,* 1931, 16 Minn. L. Rev. 137; and 100 U. of Pa. L. R. 753. In the comparatively early case of *Geremia v. Boyarsky* (Conn.), 140 A. 749, the bid was a third less than was intended. The Court held that this was not a ground for reformation but was for cancellation, even though the other party did not induce the mistake, because he did seek to take an unconscionable advantage of it after he became aware of it. It was decided that equity would grant relief in an executory situation where the parties could be put *in statu quo.* The error in that case was said not to amount to the violation of a positive legal duty or to constitute culpable negligence. See also *Barlow v. Jones* (N. J.), 87 A. 649; *Board of School Com'rs v. Bender* (Ind. App.), 72 N. E. 154; *St. Nicholas Church v. Kropp* (Minn.), 160 N. W. 500; *Kutsche v. Ford* (Mich.), 192 N. W. 714. Some courts have decided against the contractor on the facts, such as the lack of materiality of the mistake or the gross or culpable negligence of the bidder, but where the essential factual prerequisites have been found to be present, there is no substantial authority denying rescission for unilateral mistake except in Massachusetts. There, seemingly, the Court adheres strictly to the rule that equity will grant relief where there has been a mutual mistake of fact but that a mistake of but one of the parties is not grounds for relief either in law or in equity. *John J. Bowes Co. v. Town of Milton* (Mass.), 151 N. E. 116; *United States v. Conti,* 119 F. 2d 652, 655. Rescission has been decreed in a number of cases involving public bodies where there was no

statute or condition of the proposal that the bid, once made, was irrevocable but the terms of the proposal did call for forfeiture of the deposit in case of refusal to execute the contract.[1] In most of the cases cited below in the footnote the contractor was found not to have violated a positive legal duty or to have been guilty of culpable negligence because the mistake was made in the haste and pressure of preparing the bid or was natural in the conduct of the business. 3 *Pomeroy's Equity Jurisprudence,* 5th Ed., Sec. 856 b. The application of this standard of negligence has been recognized by this Court. *Hoffman v. Chapman,* 182 Md. 208, 213 and *Kappelman v. Bowie,* 201 Md. 86, both *supra.*

There are well reasoned cases in which, despite statutes similar to Sec. 38 of the Baltimore City Charter, the Courts have held that rescission would be granted against the public body. A leading case is *Moffett, Hodgkins & Clarke Co. v. Rochester,* 178 U. S. 373, 44 L. Ed. 1108, to which we have referred. There, the Circuit Court found "a clear, explicit, and undisputed" mistake in the bid and held for the contractor, but the Circuit Court of Appeals found that the mistake was a negligent omission, and reversed. The Supreme Court held that the negligence was not sufficient to preclude the claim for relief if the mistake justified it. It noted that the charter of the City provided that no bid could be withdrawn or cancelled until the board had let the contract for which the bid was made. The City was advised of the mistake before any bid was accepted, awarded the contract to another, but attempted to forfeit the bond submitted with the bid. The lower court had decreed that the bid be rescinded and cancelled and had enjoined the City from declaring default with respect to it and from forfeiting the bond. The Supreme Court

---

1. *State of Oregon v. State Construction Co.* (Ore.), 280 P. 2d 370; *Rushlight Automatic Sprinkler Co. v. City of Portland* (Ore.), 219 P. 2d 732; *Donaldson v. Abraham* (Wash.), 122 P. 1003; *School District v. Olson Construction Co.* (Neb.), 45 N. W. 2d 164; *Board of Regents v. Cole* (Ky.), 273 S. W. 508; *Kutsche v. Ford* (Mich.), 192 N. W. 714, *supra; Abner M. Harper, Inc. v. City of Newburgh,* 145 N. Y. S. 59, aff'd without opinion, 222 N. Y. 670, 119 N. E. 1047; *State Highway Commission v. Canion* (Tex. Civ. App.), 250 S. W. 2d 439.

affirmed the Circuit Court by reversing the Circuit Court of Appeals, in essence on the ground that the bid was that of the bidder only in form but in actuality was no bid at all. It adopted the reasoning and the language of the lower court, that to hold otherwise, despite the City Charter, would be to say that the moment a bidder's proposal is opened by the executive board he is held "as in a grasp of steel. There is no remedy, no escape", even though through an error of his clerk, he had agreed to do work worth $1,000,000 for $10.00, and by so doing, would be driven into bankruptcy.

In *M. F. Kemper Const. Co. v. Los Angeles,* 235 P. 2d 7, decided by the Supreme Court of California, in Bank, a contractor was allowed to rescind a bid to the City of Los Angeles because of mistake and was granted a discharge of liability on the bid guaranty bond. The charter and proposal provisions were that no bid could be withdrawn for three months except with the consent of the City, as well as that "* * * bidders 'will not be released on account of errors.' " It was further provided that the certified check or bond filed with the bid became the property of the City if the bidder did not execute the contract awarded to him. The mistake was the omission in the bid of some $300,000 from the "final accumulation sheet" from which the total bid price was taken. As in the case before us, this item was not transferred from the work sheets. Although the City was notified of, and shown the details of, the error seven hours after the bids were opened, it awarded the contract to the blundering bidder. He refused to enter into a written contract or to perform. The Court said: "Once opened and declared, the company's bid was in the nature of an irrevocable option, a contract right of which the city could not be deprived without its consent unless the requirements for rescission were satisfied." The Court said further: "Relief from mistaken bids is consistently allowed where one party knows or has reason to know of the other's error and the requirements for rescission are fulfilled." The Court went on to hold that the requirements of rescission would be fulfilled if the mistake was material and not the result of violation of a legal duty, if enforcement of the contract as made would be unconscionable, and if the city could be placed

*in statu quo* with only the loss of its bargain, citing 3 *Pomeroy's Equity Jurisprudence,* 5th Ed., Sec. 870 a. It found that there was no violation of a legal duty or culpable negligence and that the errors that would not release a bidder were errors of judgment and not clerical errors or mechanical mistakes. The Court finally concluded that although the bid was in the nature of an irrevocable offer or option it was subject to rescission upon proper equitable grounds and that the cases recognize no distinction between public and private contracts with respect to equitable relief. It refused to agree with the city's contention that the charter should be construed as requiring forfeiture of bid bonds in situations where the bidder has a legal excuse for refusing to enter into a formal written contract.

*W. F. Martens & Co. v. Syracuse,* 171 N. Y. S. 87, is a case in which essential facts were similar to those of the instant case. The Court said: "Plaintiff's error was entirely inadvertent, and the trial court, we think, with entire propriety held that, so far as a rescission of its bid was concerned, the facts presented a case for granting the relief sought. Any other disposition would have been inequitable. * * * Respondents invoke the provisions of section 121 of the Second Class Cities Law as preventing a withdrawal of plaintiff's bid until the awarding and execution of the contract. We do not think, in view of the mistake which plaintiff made, that it was precluded from withdrawing its erroneous bid. In reality, it never submitted its real bid, but an erroneous one, not at all expressing its intent."

In *Donaldson v. Abraham* (Wash.), 122 P. 1003, the Court held that equity would relieve from a forfeiture provided by statute exactly as it would from one provided by ordinary contract.

*Conduit & Foundation Corp. v. Atlantic City* (N. J.), 64 A. 2d 382, dealt with a low bid from which an item of $50,250.00 had been inadvertently omitted. The City was notified before it accepted the bid, but awarded the bid to the mistaken bidder. He could not secure a bond because of his error and the City forfeited the deposit. The Court decreed rescission of the bid and return of the deposit be-

cause the City's acceptance of the bid, in the face of a material, excusable error, was unconscionable. It held: 1, that a competitive bid submitted under statutory privilege and regulation is in the nature of an option to the municipality, based upon a valuable consideration; 2, an offer for which a consideration has been given is both an offer and a unilateral contract—in effect, an irrevocable offer or option; 3, for a unilateral mistake in a unilateral contract, the remedy in a court of equity is rescission.

In *Connecticut v. F. H. McGraw & Co., Inc.* (Conn.), 41 F. Supp. 369, Clark, Circuit Judge, sitting as District Judge, found that there was a bona fide and material mistake by a bidder which was thoroughly known to the State before it accepted the bid. The Connecticut case of *Geremia v. Boyarsky,* 140 A. 749, *supra,* was said to be an exact precedent. It was then said: "It is objected that the rule should be different where, as here, there is a proviso forbidding the withdrawal of bids. To be sure, this puts a bidder on notice that there is a certain finality about bidding for a government contract. But this by no means should enable a governmental agency to take an unconscionable advantage of its special status as a government body. * * * Furthermore, the court in the *Geremia* case cited with approval *Moffett, Hodgkins & Clarke Co. v. City of Rochester,* 178 U. S. 373, 20 S. Ct. 957, 44 L. Ed. 1108, a case in which the error was contained in a public contract bid not subject to withdrawal. * * * The proper effect of the requirement that bids remain unrevoked is to assure the State that a bidder will be relieved of his obligation only when it is legally justifiable. That means that the State is in the same position as any acceptor when there is a question of rectifying an error. * * * Of course, it is obvious, as the State contends, that the system of public bidding, developed by experience and usual in public contracts, should not be broken down by lightly permitting bidders to withdraw because of change of mind. Such a course would be unfair to other straight-forward bidders, as well as disruptive of public business. But it can hardly be a substantial impairment of such system to grant the relief—which would clearly be given as between private citizens—in a case

where a bona fide mistake is proven and was known to the State before acceptance or any loss to it."

As has been emphasized, the City relies on *M. & C. C. of Baltimore v. Robinson Con. Co.*, 123 Md. 660, as controlling the present case. There the City awarded the contract to a bidder who had advised it before the bid was opened and again before it was accepted, that it was $11,000.00 less than was intended. The error was in putting down one item at $952.13, when it should have been $11,952.13. The bidder refused to execute the contract and the City forfeited his $500.00 deposit. He sued at law to recover and this Court said that he could not prevail. The opinion pointed out that the provisions of the Charter—now codified as Sec. 38—warned the bidder that his bid is irrevocable, as well as of his agreement to reimburse the City to the extent of $500.00 damages if he does not for any reason want to execute the contract.

There are a number of differences between the *Robinson* case and the present case. The Robinson Company was a responsible bidder and the lowest bidder. The City, in entire good faith, could have made an award knowing that the bidder had the capacity to perform. Thus, when the City did accept the bid, the Robinson Company was faced with its contractual obligation—delineated by the Charter provisions —either to perform or to forfeit $500.00. When it sought at law to recover the forfeit, it was faced with the fact that ownership of the $500.00 had at law passed to and remained in the City. Law could only act in the situation as it found it. It could not change the contract. It could not reform or rescind it as could equity, so there was no basis in law on which to ground recovery. The opinion of this Court in *Boyce v. Wilson*, 32 Md. 122, makes this plain, showing that law must deal rigidly with a contract as it stands while equity has flexibility. The *Robinson* opinion shows clearly that the form of the action, the circumstances that it was at law, was important, if not decisive in the result. It cites 28 Cyc. 661 to the effect that " 'A bidder has no right *at law,* nor have the municipal officers power to permit him to withdraw his bid and deposit.' " (Emphasis ours.) It relied on a Massachusetts decision denying recovery of a deposit in an action

at law. It distinguished the *Moffett* case on the ground that there the action was in equity.

In the case before us, DeLuca-Davis sought the aid of equity before its bid had been accepted, and demonstrated to the chancellor that it had made a material, honest and palpable mistake. It produced evidence that clearly would permit, if it did not compel, a finding that it was not a responsible bidder as to the original bid, since it could not obtain a bond for the performance of the contract at the bid price, and performance would cause a loss of over $400,000.00 to a corporation with a capital of only $82,000.00. If, with this knowledge, the City accepted the bid of DeLuca-Davis, it scarcely could be with the bona fide expectation that performance would follow but only with the intention of bringing about a refusal to perform and the consequent forfeiture of the $50,000.00—conduct which equity must view as unconscionable.

The .Court in the *Robinson* opinion gave definite indication that if equitable relief had been sought, the rules of decision might well have been different. It said: "If the contract were made by the bid and acceptance the bidder then would be compelled to carry it out or be responsible for it, unless a *Court of Equity,* for sufficient cause, should relieve him, by rescinding the contract." (Emphasis supplied.) [2] In distinguishing the *Moffett* case, it said that there the matter came up on "* * * *a bill in equity for a reformation of the proposal.* and therefore is not authority for the *form of action* in this case. In fact, all of the cases, cited by the appellee, are cases *in equity* and in the most of them there was no statute involved." (Emphasis supplied). Corbin's comment on the *Robinson* case is: "the deposit small and 'equitable' relief not asked."

For cases by the same Court, where relief against a mistaken bid was granted in equity and denied at law, see *St.*

---

2. It should be noted that in *American Lighting Co. v. McCuen,* 92 Md. 703, 706, it was held: "We think there can be no serious contention that the advertisement specifications, the bid of the plaintiff, and 'the award of the contract' to it by the Board of Estimates taken together constitute a valid and complete contract."

*Nicholas Church v. Kropp* (Minn.), 160 N. W. 500, *supra;*
*Federal Contracting Co. v. St. Paul* (Minn.), 225 N. W. 149.

If it be conceded that in the posture of the case as it came
to the Court, the *Robinson* decision was sound in holding that
a bidder could not withdraw his bid at will and was bound
by his obligation as long as it was legally unrevoked, we agree
with the views of the Court in the *McGraw* case, from which
we have quoted above, that the proper effects of the charter
requirements are to assure the municipality that a bidder will
be relieved of his obligation only when it is legally justifiable,
and that it is legally justifiable when a court of equity is satis-
fied by clear, cogent and convincing proof that an honest,
clerical or mechanical error, not the result of gross or culpable
negligence, made the bid that of the bidder in form only
but not in actual intent or substance, and the gain of the
other party would be unconscionable if advantage were taken
of the mistake and the loss would only be that of the bargain
if the mistake were nullified. In such circumstances, the
blundering bidder may be relieved in equity of his obligation
created at law by his bid and deposit, and this is true even
though the bid was submitted to a public body under a statute
declaring the bid to be irrevocable and providing for the
forfeiture of the deposit.

The City argues that the Board of Estimates has taken no
action on any of the bids and it cannot be told how it will act
so that a decision in the case is premature. The City formally
denied in its answer the allegations in the complaint of De-
Luca-Davis that the Board of Estimates proposed to accept
the erroneous bid, but no proof to that effect was offered and
neither in its brief nor at the argument did the City give any
indication of intent other than to hold DeLuca-Davis "* * *
as in a grasp of steel", under the authority of the *Robinson*
case, and to forfeit the deposit when the bidder failed to
execute the contract.

If the Board had in mind that at the appropriate time, it
would declare DeLuca-Davis not a responsible bidder, it
could have disposed of this branch of the controversy by
merely announcing that intent, and its failure to do so serves
as a basis for the assumption that its intent is otherwise. The

Charter gives the Board the power and duty of determining the lowest responsible bidder. In that determination it has a wide discretion and the courts will not control it or interfere except for arbitrary or capricious exercise or where there is collusion or fraud. *Fuller Co. v. Elderkin,* 160 Md. 660, 668; *Biddison v. Whitman,* 183 Md. 620, 628. We need not and do not decide whether on this record, knowledge of which is chargeable to the Board of Estimates, DeLuca-Davis could be determined to be a responsible bidder, although it is difficult to conceive that the Board could in good faith determine that it is. The notice of letting provides that "No contract will be awarded to any bidder who, in the judgment of the Board of Estimates is not a responsible bidder, or is not prepared, with all the necessary experience, *capital,* organization and equipment, to conduct and complete the work for which the bidder proposes to contract, in strict accordance with all the terms and provisions of the contract documents." (Emphasis supplied.) DeLuca-Davis has a net worth of $82,000.00. Obviously, it could not stand the $400,000.00 loss that the performing of the contract would bring, without going into bankruptcy. Pecuniary worth is not the only test of responsibility but pecuniary ability to perform is a vital essential of responsibility. *Maryland Pavement Co. v. Mahool,* 110 Md. 397, 403; *Syracuse Intercepting Sewer Board v. Fidelity & Deposit Co.* (N. Y.), 174 N. E. 657, 659. DeLuca-Davis could not obtain a bond as the Charter and notice of letting required. It has been held that one who cannot furnish bond is not a responsible bidder. *Gibson v. Owens* (Mo.), 21 S. W. 1107; *Leitz v. New Orleans* (La.), 67 So. 339; and an awarding body may give the contract to the next lowest bidder who is responsible. If the Board of Estimates intends to declare DeLuca-Davis not a responsible bidder, no harm is done by a decree rescinding the contract and calling for the return of the deposit. Both of these consequences would follow a determination by the Board that DeLuca-Davis was not responsible. Whether the Board itself throws out DeLuca-Davis' bid or the court does so, the Board can reject all bids and re-advertise, or award the bid to the next lowest bidder who is responsible.

We find that DeLuca-Davis is entitled to cancellation of its bid and the return of its deposit.

> *Decree reversed, with costs; case remanded for passage of a decree in conformity with this opinion.*