**GLAMORGAN PIPE & FOUNDRY CO.**

v.

**WASHINGTON SUBURBAN SANITARY COMMISSION.**
Civ. No. 11587.

United States District Court
D. Maryland.
May 26, 1960.

C. Robert Mathis and Raymond C. Cushwa, Washington, D. C., and Joseph D. Tydings, Baltimore, Md., for plaintiff.

Robert A. Diemer and John B. Kenkel, Hyattsville, Md., for defendant.

THOMSEN, Chief Judge.

This is an action by a bidder on a public contract for rescission of its bid on the ground of unilateral mistake and for recovery of the deposit made therewith. The principal issues are (1) whether plaintiff's bid was revocable after the bids had been opened but before plaintiff's bid was accepted, and (2) whether the mistake was of such grave consequences that it would be unconscionable to allow defendant to forfeit the deposit.

### Facts

Defendant is a municipal corporation of the State of Maryland. Plaintiff is a Virginia corporation engaged in the business of manufacturing and selling cast iron pipe.

On or about June 4, 1959, defendant advertised for sealed bids or proposals for furnishing and delivering 147,300 linear feet of cast iron water pressure pipe, of various diameters, such bids to be submitted by 10:30 a. m. on June 19, 1959, at which time they would be publicly opened and read. Defendant furnished to prospective bidders, including plaintiff, a document entitled "Specifications—Information for Bidders—Proposal, Contract and Bond", which contained the following requirement: "Each proposal must be accompanied by a certified check or a satisfactory bid bond for 5 per cent of the amount of the proposal, payable to Washington Suburban Sanitary Commission, and unless so accompanied will not be considered. The check of the bidder to whom the contract is awarded will be forfeited to the Commission as liquidated damages in case the contract and bond, if required, are not executed within ten (10) days after receiving the contract for execution."

On June 15, 1959, plaintiff submitted a bid in the amount of $359,310, accompanied by a certified check for $19,000. Plaintiff's letter transmitting its bid stated: "Our proposal is for your acceptance within thirty days from date of opening of bids." The bids were publicly opened shortly after 10:30 a. m. on June 19, 1959, at defendant's office. There were six bids which ran as follows: Glamorgan Pipe & Foundry Co., $359,310; Shahmoon Industries, $375,202; U. S. Pipe & Foundry, $377,426.50; Florence Pipe Foundry & Machine Co., $381,496; Lynchburg Foundry Co., $385,397; American Cast Iron Pipe Co., $394,587.50. After reading the bids aloud, defendant's purchasing agent gave them to a clerk to see if they were mathematically correct. It is the regular practice of the Commission to award the contract to the low bidder unless there are some exceptions in the bid, and the purchasing agent recommended that plaintiff's low bid be accepted.

One of plaintiff's salesmen was present at the opening of the bids, and reported the amounts thereof to Winfree, plaintiff's vice-president in charge of

sales. Shortly thereafter Winfree telephoned defendant's purchasing agent, told him that a mistake had been made in the bid, and requested permission to withdraw the bid. Later that day Winfree wrote defendant:

"We request permission to withdraw our bid on the above contract without forfeiture of our certified check.

"The writer when transposing the ton price for one of our clerks to use in arriving at the foot price of the pipe on which we quoted inadvertently made an error of $10.00 per ton. The result, our prices are all $10.00 per ton under those which we planned to quote.

"We will appreciate your giving this consideration in arriving at your decision and trust you will permit us to withdraw our bid as requested."

At the trial Winfree testified that in preparing the bid he had intended to use a net ton base price of $139.70 for pipe of 12″ diameter, but when he gave the work sheet to his clerk he wrote down $129.70 by mistake. The clerk converted the net ton base price to the corresponding price per foot, with appropriate adjustments for different diameters, and reached the bid price of $359,310. If a net ton base price of $139.70 had been used, the total bid would have been $385,534, higher than any of the other companies which proposed, as did plaintiff, to supply pipe with "Tyton" joints.

On June 22 plaintiff's acting assistant sales manager wrote defendant reiterating that a $10 per ton mistake had been made, and saying:

" * * * You can readily see that our bid was obviously in error when you compare our unit prices to those submitted to you on Contract 2417–

W March 4, 1959. With the low margin of profit on such a competitive product as cast iron pipe, it is highly unlikely that you have or will experience the extreme spread in prices that were displayed on Contract 2417–W.[1]

"Our error made in this proposal will impose a considerable financial loss on us.

\*   \*   \*   \*   \*   \*

"This error, we know, has placed you as well as ourselves in a very embarrassing situation but in view of the above reasoning and our past relations with you, we hope that the Commission will find our request reasonable and permit us to withdraw our bid without the forfeiture of our certified check."

At the trial, however, plaintiff did not offer any evidence to show its costs or any evidence that plaintiff would in fact have sustained any loss if it had supplied the pipe in accordance with its bid.

On June 23, defendant sent plaintiff for execution a contract for supplying the pipe at the bid price of $359,310. On June 30, plaintiff's vice-president met with defendant's representatives, offered an explanation as to the manner in which the mistake in the bid had been made, and again requested that plaintiff's bid be withdrawn and its deposit returned. On the same day, defendant's general counsel advised plaintiff by letter that the Commission refused to permit the withdrawal of the bid. He said:

" * * * Pursuant to the provisions of the specifications and Information for Bidders the contract must be executed within ten days of receipt of the same or the certified check accompanying your proposal will be forfeited to the Commission as liquidated damages. These are

1. Since the contract on which plaintiff was bidding was Contract 2417–W, the reference in the letter to "Contract 2417–W March 4, 1959" is not clear. The "spread" in the bids in the March 4 contract was not proved. It was shown that plaintiff had based its bid for that contract on a net ton base price of something less than $139.70, and had not been the low bidder.

the conditions to which you subscribed by submitting a proposal and requesting the Commission to favor you with the contract if your bid was the lowest."

On July 1, plaintiff returned the contract unsigned and again asked defendant to return the certified check.

Because of the delay incident to those negotiations, the second bidder (Shahmoon Industries, $375,202 bid) was no longer in a position to supply the pipe, so the contract was let to the third bidder, U. S. Pipe & Foundry Co., at its bid price of $377,426.50, $18,116.50 over plaintiff's bid of $359,310. Defendant claims the right to retain plaintiff's $19,000 deposit as liquidated damages.

## Discussion

The provision quoted above from the invitation for bids has the same effect as the provisions of the Baltimore City Charter discussed in Mayor and City Council of Baltimore v. J. L. Robinson Construction Co., 123 Md. 660, 91 A. 682, L.R.A.1915A, 225, and in City of Baltimore v. DeLuca-Davis Construction Co., 210 Md. 518, 124 A.2d 557. This was understood by plaintiff, as is shown by its letter enclosing its bid and by the precatory nature of its correspondence after the bids were opened, as well as by the general custom of defendant, with which plaintiff was familiar.

In Robinson the Court of Appeals said: "These are the conditions which must be subscribed to by anyone who wishes to be in a position to get a contract with the city. They do not make the proposal and the acceptance the contract, but the formal contract is to be entered into later. They make plain to the bidder just what obligation he is entering upon when he submits a bid. He knows that his bid is irrevocable, but he further knows that if he, for any reason, after his bid is accepted, does not want to enter into a contract the condition of his becoming a bidder obligates him expressly to reimburse the city to the extent of $500 damages." 123 Md. at pages 663, 664, 91 A. at page 683. The Court cited Dillon on Municipal Corporations, McQuillin on Municipal Corporations, and cases from Massachusetts, Illinois, New York and the Eighth Circuit.

The Maryland Court stated the reason for the rule as follows: "While it may appear a hardship upon the bidder, the practical side, as illustrated by this record, of awarding contracts by closed bidding shows it to be a wise provision for municipalities. After the bids were all in, and before the bids were opened, this appellee easily ascertained from his competitors the amounts of their bids. What would there then be to prevent a dishonest bidder, upon finding that his bid was extremely low, from declaring that he had made a mistake, and thus put the city to the costs of delay and readvertising?" 123 Md. at page 666, 91 A. at page 684.

The Court indicated that equity might grant relief in a proper case. 123 Md. at pages 664, 666, 91 A. at pages 683, 684. Such a case arose in 1956, when through a palpable clerical error the DeLuca-Davis Construction Co. made a mistake of nearly $600,000 in a bid which should have been $2,385,944.25 rather than the $1,796,064.25 actually bid. The engineer's estimate and the next lowest bid were about $700,000 higher than the DeLuca-Davis bid. The net worth of the DeLuca-Davis Company was $82,000 and it was shown that "if it were compelled to perform the contract at the original bid, it would suffer a loss of over $400,000 and that it could not obtain a bond if the job were to be done at the original estimate." 210 Md. at page 523, 124 A.2d at page 559. The amount of the deposit was $50,000. The trial court found: (1) there was an error in the bid of the appellee which was entirely clerical and mechanical; (2) the error was material and substantial; (3) the error was palpable and the City, as soon as the bids were opened, either knew or should have known that there was a substantial er-

ror in the bid; (4) the error was made in absolute good faith. The Court of Appeals cited with approval the holding of a New Jersey court that a competitive bid submitted under statutory privilege and regulation is in the nature of an option to the municipality, and that for a unilateral mistake in such a unilateral contract, the remedy in a court of equity is rescission. 210 Md. at page 532, 124 A.2d at page 564. The Court distinguished Robinson and said: "The general rule as to the conditions precedent to rescission for unilateral mistakes may be summarized thus: 1, the mistake must be of such grave consequences that to enforce the contract as made or offered would be unconscionable; 2, the mistake must relate to a material feature of the contract; 3, the mistake must not have come about because of the violation of a positive legal duty or from culpable negligence; 4, the other party must be put in statu quo to the extent that he suffers no serious prejudice except the loss of his bargain." 210 Md. at page 527, 124 A.2d at page 562.

■ The cases in which rescission has been decreed have recognized that in order to obtain equitable relief against the legal effect of the submission of a bid on a public contract, on the ground of mistake, it is necessary for the bidder to show all the facts and circumstances which would render enforcement of the bid inequitable. See e. g. Hattiesburg v. Cobb Bros. Constr. Co., 183 Miss. 482, 184 So. 630. Sec. 511 of the Restatement of the Law, Contracts, states: "It is essential in order to obtain a decree rescinding or reforming a written conveyance, contract, assignment or discharge for mistake, that the facts necessary for the allowance of the remedy shall be proved by clear and convincing evidence and not by a mere preponderance."

■ In the instant case, I find that plaintiff's bid was lower than Winfree had intended but I am by no means satisfied that such mistake was the real or the only reason plaintiff desired to withdraw its bid. Plaintiff has not proved what its costs were, or that it could not have supplied the pipe at its bid price without loss, albeit at a reduced profit. A bid of only 5% below the second and third bids and less than 10% below the sixth and highest bid, does not show such a palpable error that defendant should have known, as soon as the bids were opened, that there must have been a substantial error in the bid. Plaintiff has not shown that the claimed mistake was of such grave consequences that it would be unconscionable to permit defendant to forfeit the deposit in accordance with the terms of the invitation for bids.

Moreover, Winfree testified that the price per ton is customarily checked by the eastern sales manager, but that he was not available at that time. Under those circumstances, Winfree would normally have checked his own figures but did not do so because of the volume of work. He testified that he had used the wrong figure once or twice before in the past. Plaintiff has not shown that it was free from culpable negligence.

Defendant was entitled to retain the deposit as liquidated damages in accordance with the terms of the invitation for bids. These terms called for a deposit of 5% of the bid. Plaintiff's check was for $19,000, which was $1,034.50 more than 5% of its bid.[2] Under all the circumstances, the amount which defendant is entitled to retain as liquidated damages should be limited to the amount specified in the invitation, namely 5% of plaintiff's bid, or $17,965.50. This is within a few dollars of defendant's actual loss, $18,116.

I will enter a decree directing defendant to refund to plaintiff $1,034.50, each party to bear its own costs.

2. Though less than 5% of the bid it claims to have intended.